The following opinions were delivered by the court.
Tilghman C. J.
In the argument of this case four poiiits have been made.
1. What estate passed to Joseph Sharp by the devise in the will of James Sharp?
2. Can an entail be created by the law of Pennsylvania, in land held by warrant and survey without patent ?
3. What was the effect of the patent granted to John Boyd?
4. Was the award of the arbitrators in the former action conclusive of the title ?
1. The first devise to Joseph Sharp is a clear estate tail; " to have and to hold, to him and the heirs of his body law- “ fully begotten, or to be begotten forever.” Here is a decided intention expressed in technical language. Nor is there any subsequent passage showing an intent to enlarge this estate to a fee simple. The testator afterwards devises as follows:“ In case my son Joseph should die without the “ lawful issue,” &c. [Here the Chief Justice read this part of the will.] The testator in this last devise makes no difference between real and personal estate, not knowing *208 probably that the law made any difference. Indeed it is 'known to féw but lawyers. But his ignorance of the law makes no difference in his intent. He still looked forward to the heirs of the body of his son. At all events there is no intimation of a desire to give a fee simple, and it would not suit the defendant’s purpose to contend, that it was meant to give no more than an estate for life. I am well satisfied upon the whole, although there is some obscurity in the latter clause, that the main intent was to give the estate to the son and the heirs of his body, which is a proper estate-tail.
2. The land was taken up by warrant and survey in the year 1731. Was it entailable in 1777, when this will was made? It was without doubt. Although this estate was once esteemed no more than personal, yet long before 1777 it was considered as real. I do not think that this matter should any longer be considered as open to discussion. It affects the stability of landed property; for land to a very great amount is still held, even in the old counties, without patent. The very same point might have been made, but was not thought tenable in the much contested case of the Lessee of Burkart and Willis v. Bucher, &?c. 2 Binn. 455. In the same case it was decided after full argument and mature consideration, that although the legal estate remained in the commonwealth, the equitable interest which was vested in the warrantee, was, by the law of Pennsylvania, the subject of an entail. There let the matter rest. It is time for that point too to be considered as settled.
3. What is the effect of the patent? The officers of the commonwealth are to give the patent to him who is entitled to it; and if they give it to any other person, that person is no more than a trustee for him who has the right. This is the settled law in our courts, and the courts of the United States adopted the same principle in Huydekepper’s lessee v. Douglas. If the officers of the land office were deceived or mistaken as to the will of fam.es Sharp, the heir in tail is not to be injured by it. The patentee had notice of that will, and made title under it. If he mistook the title it was his mis.fortune. But it was a misfortune brought on by his own imprudence. He ought to have taken counsel before he made his purchase.
4. What is the effect of the arbitration and award in the former action ? I shall give no opinion on the effect of an *209 arbitration and award at common law, because that is not the case before us. Dixon’s lessee v. Moorhead was an award at common law. President Addison gave no decided opinion upon it. But when it came to trial before Chief Justice M‘Kean and Judge Smith, at Nisi Prius in Westmoreland county, (April, 1798,) it was determined that the' award was not conclusive. The act of 1705, (1 Smith’s Laws, 50,) under which this reference was made, declares, that the award being approved of by the court, “ shall have the same “ effect and shall be deemed and taken to be as available in “law as a verdict given hy twelve men’’ When a reference therefore is made under this act, it is understood by the parties that the award is to be submitted to the court for their approbation, and when approved is to have the effect of a verdict. What is the effect of a verdict and judgment in ejectment ? The plaintiff recovers possession, and the record is evidence in any subsequent suit between the same parties, but it is not conclusive. It is said that a reference may be entered under a rule of court, submitting other matters than those for which the action is brought, and in such case the court will enforce performance by attachment. But if the law were so, it would not apply to a case in which other matters were not submitted. It would not apply to the case before us, for here the submission was of “ all matters in “ controversy in the cause.” What was in controversy in that cause ? The right of possession, and no more. I see not how such an award can be conclusive of the title. Would chancery decree a conveyance upon it ? I should suppose not, because the parties never agreed to convey or to abide by, or perform the award any further than the act of assembly requires, that is to say, to have judgment entered upon it. But it is said that the point was decided at Nisi Prius in Calhoun v. Dunning, by Judges Shippen and Bradford, (4 Dallas, 120.) Against this is to be placed the decision of Chief Justice M‘Kean and Judge Smith in Dixon’s lessee v. Moorhead, where the argument is a fortiori, that being an award at common law. Besides the authority of Calhoun v. Dunning is much weakened by this circumstance, that the same title was brought to trial in several subsequent actions between the same parties, or those claiming under them, when the award was not contended to be conclusive. I understand too that in Taggart’s lessee v. Bickley, tried before *210 this court in bank, (September Term, 1805,) an award which had been made in another suit betweenbhe same parties was not considered as conclusive. So that on the whole, the weight of authority in our own courts is against the conclusiveness of this award. I do not form my opinion, however^ on this authority, so much as on the act of assembly under which the reference was made. That act gives the award the effect of a verdict, and therefore I am for giving it the same effect, and no more. My opinion upon this whole case, is, that judgment should be entered for the plaintiff.
Yeates J.
I again express my entire concurrence with the Chief Justice upon all the points contained in his opinion in Burkhart and Willis's lessee v. Bucher et al., 2 Binn. 463. For above fifty years past lands held by warrant and survey^ without patents, have been considered as the legal estate in England, subject to the liens of judgments, courtesy, dower, and other incidents of real property. Adapting this principle to the premises in question, there can be no doubt that Joseph Sharp took an estate-tail under the will of James Sharp his father, and that his son Joseph succeeded thereto per forman doni, the issue in tail not being barred by the conveyance to John Boyd. The plaintiff has therefore deduced a regular title under his deed, regularly perfected, to bar the estate-tail (according to the provisions of the law on this subject) from Joseph Sharp the second. The patent granted by the secretary of the land office to John Boyd on the `18th May, 1810, recites, that the right of James Sharp under his warrant, “ by virtue of sundry good conveyances became “ vested in the said John Boydf which was not true in fact, and can have no operation on the plaintiff’s claim, in derogation of the last will of the warrantee. In all such cases the right does not depend on who has obtained the patent, but to whom the patent ought to have been granted, according to the known laws and usages of the state. It cannot be endured for a moment, that the decision of the land officers upon a contested title can conclude the rights of the litigant parties. The remedy by an appeal to the ordinary courts of justice is still open to them.
The only difficulty then which stands in the way of the plaintiff is the award of the referees in the ejectment brought by John Boyd against Joseph Sharp and others, to May *211 Term, 1808, and the judgment rendered thereon for the plaintiff, by the court on the 2d May, 1810. The question arising thereupon has been argued with much ingenuity and ability by the counsel on both sides. It was agreed by a written paper signed by the parties, “ that the matters in con- “ troversy in the above cause should be referred to five per- “ sons named therein, or any three of them, to proceed ex uparte on six days notice.” This was afterwards entered on the docket, and the referees reported, “ that after being duly “ qualified according to law, and hearing the proofs and alle- “ gations of the parties, they do award that the land in dispute, is the property of John BoydP Exceptions were duly filed to this report, which were afterwards over-ruled by the court, and judgment rendered for the plaintiff. What then was the legal operation of these facts ?
It has been asked, why should not a legal decision on a question of realty be equally conclusive, as in a case of personalty? The answer is, that the law respects the former in general principles of policy from its permanent state, passing from generation'to generation, much more than the latter, which quickly passes from one hand to another. Again it is said, that ejectments are no longer tried on fictitious leases, distinct in different suits, but that species of action is wholly changed by the act of assembly of 21st March, 1806. This remark is readily answered. The act only varies the mode of commencing the action, and the pleadings thereon, but alters none of its essential qualities or effects. Unless where new provisions have been introduced, the law remains as it was antecedently. The supplement thereto of the 13th April, 1807, fully evinces that one trial and judgment in ejectment does not conclude the losing party; because it declares, that no new ejectment shall be supported after Izuo trials and judgments in favour of the adverse party. A distinction has been attempted, between the decision of a jury and referees on a controverted claim of lands. In the first instance, the verdict and judgment in ejectment are agreed to be no bar ; but in the last, the award being made by judges of the parties own choosing, is asserted to be conclusive. But what solid ground is there for this distinction ? A jury selected, fairly drawn from the wheels, returned and ballotted for, against whom no challenges have been made, may be considered equally as referees to be judges of the voluntary choice of the parties. It *212 is true, a submission unconnected with a rule of court, may “be couched, in such strong terms, that the award may by consent of parties, be final and conclusive, as where they agree that certain persons named by themselves shall fix a boundary line between them, which shall be for ever binding. But where no such special agreement takes place, and the reference is made under a rule of court, the 3d section of the old defalcation act of 1705, declares, in the most plain and unequivocal terms, what legal operation the award shall have. “ It shall, when made according to the submission of the par- ■“ ties, and approved of by the court, and entered upon the “record or roll, have the same effect, and shall be deemed “ and taken as available in law, as a verdict of twelve men.” Where the expressions of the legislature are clear and unambiguous, a system of reasoning opposed thereto, founded on supposed mischiefs or analogy, has little effect on my mind. In this case, moreover, the submission was of the matters in controversy in the cause then pending to certain persons. The cause was ejectment, in which the possession of the premises was demanded by the plaintiff. If he had recovered by the verdict of twelve men, to the entire satisfaction of the court, who afterwards rendered -judgment on it, the defendant, Joseph Sharp, would not be concluded by it, but might afterwards commence a new ejectment. Why should his vendee, who succeeds to all his rights, be placed in a worse situation, although an award has been made in one instance against his vendor ? ' .
Authorities have been cited on both sides. I allow the decisions of the Common Pleas of Chester county their full weight. There can be no doubt, but the learned president of that court was, and is fully of opinion, that the award of referees, sanctioned by the court, is conclusive on the subject matter, though it be land. This writ of error is brought to reverse his decision.
Samuel Dixon's lessee v. Samuel Moorhead, ( Addison, 2, 16.) was relied on by the defendant’s counsel. The parties there, when no suit was depending, submitted their title to the decision of five arbitrators, who made their award in favour of Dixon. The jury afterwards found against him, and upon a motion for a new trial, the president of the court seemed to have changed the opinion he had delivered in his charge to the jury, and awarded a new trial, on the ground of sufficient *213 weight not having been given to the award. But in his report of the case, he does not go to the length of asserting, " that the award was conclusive. A new ejectment was after-wards brought and tried before M‘Kean Chief Justice, and Smith Justice, at Greensburgh, on the 1st May, 1788. I have carefully examined Judge Smith’s notes of that trial, and find that Judge Brackenridge, then counsel for the defendants, insisted on the distinction already stated, between awards under rules of court, and under voluntary submissions to arbitrators where no suit was depending. He contended, that this being an award at common law, was not under the controul of any court, and therefore the law urged against him did not apply. Mr. Woods, contra, denied the-conclusiveness of the award, although there was no suit. He admitted it to be entitled to weight on the trial, but insisted that it could have no other effect than a verdict. The court instructed the jury, that they must judge for themselves on the evidence laid before them. They could not tell upon what grounds the arbitrators had proceeded, but there was no principle in law or reason to support the position, that the award was final; and the fact contradicted the position in that instance. A verdict passed for Dixon, which afterwards received the sanction of the court.
The lessee of James Calhoun v. Ezekiel Dunning, (4 Dallas, 120,) was much relied on, I have been much conversant in the merits of the title claimed by Calhoun and fames Caruthers his vendee, having acted as their counsel above twenty years. I well recollect arguing exceptions to the report of referees in the Court of Common Pleas, in the action of trespass on the ground of the referees having exceeded their authority; and that the report was confirmed as to the matters within their powers. Being at a distance from my papers, I will not venture to descend into further particulars,. I have obtained the notes of Judge Shippen of the trial. The arguments of counsel are detailed in the notes, but nothing is said of the opinion of the court. I am strongly inclined to think, that implicit confidence is not to be placed on the accuracy of that report. '
The case of the lessee of John Taggart v. Abraham Bickley, tried in bank in this Court, 3d September, 1803, has been cited by the plaintiff’s counsel. There the plaintiff recovered to the entire satisfaction of the court, although there had *214 been a former award adverse to him on the same title. I have no recourse to my notes to be more particular.
I abstain from giving any opinion on the weight of authority on either side; but I cannot avoid saying, that in my idea the general impression of the profession has been, that no awards under rules of court are conclusive in ejectments. They derive their efficacy from the judgment of the court under the law of 1705, and may be enforced either by execution or attachment. Should they be disapproved of, I know of no possible mode, by which they can be enforced, either at commmon law, or any municipal regulation or practice. I am therefore of opinion, that the plaintiff is entitled to judgment ; but under the suggestion of his counsel, I think it just and reasonable, that the purchase money, fees of office, and expenses incurred in obtaining the patent thereon, should be paid to the persons entitled either by descent or purchase under John Boyd., upon their assignment of the patent to the plaintiff.
Brackenridge J.
There is not the same reason that an award under a rule of reference by consent of parties, should not conclude, as in the case of a verdict by a jury; because the law selects the jury, and there is something of chance in constituting the tribunal. The sense of two out of three juries in a matter of real estate has been given by our late act of assembly. Under the fiction of a lease in ejectment, there was no limit under the law of this state, there being no court of chancery to stay after two or more verdicts, and judgments upon these in favour of a party. It might be considered therefore an improvement of the law here, to make two out of three conclusive of the claim.
But in the case of a reference in an ejectment depending by consent of parties, under the act of 1705, it is provided, that the award approved by the court shall have the force of a verdict; so that judgment may be pronounced upon it, and that it may be carried into effect as a verdict. It shall also have the effect of a verdict and judgment upon it, in being admissible in evidence in a new action between the same parties, and on the some point. It was the advantage of the fiction in ejectment, and it is the policy of the act of assembly, that in matter of real estate, this evidence short of two verdicts and judgments in favour of a party, shall not bar or *215 be conclusive. 'But it does not necessarily follow, that because an award shall have the effect of a verdict, it shall nothave more, where the reason is, that it shall have more, and conclude in the first instance. Is it not the understanding of the parties where the rule is entered into by consent, in a controversy respecting real estate, as well as in a controversy respecting any thing else, that the award fairly made, and no mistake in law or fact happening, but approved by the court, shall be conclusive ? It is immaterial whether it is expressed in the rule, or is not expressed, that the award shall be final and conclusive. It is the understanding, that it shall be so when entered into in an ejectment depending, as well as in any .thing else. It is not a light matter, either as it respects ex-' pense or trouble, to get together referees and procure the attendance of witnesses; and who would subject themselves to this, if they did not expect that an award and judgment upon it, would settle the dispute ? In a matter of real estate public policy requires above that of personal, that a controversy should be at rest, and this for the sake of the improvement of the country, and the interest reipublicce ut sit finis litium, applies more especially to the possession of real property. And why judicial tribunals, unless for the sake of. the bar, should be disposed, contrary to what the parties themselves intend or expect at the entering of a rule of reference in ejectment, to put it upon the rubber as the whist players do, and not upon the game, is what I cannot comprehend. I put it upon the understanding of the parties at the time of entering the rule, and unless it appeared from the words by an express negative, that it should not be final, I would hold the award, no misbehaviour of referees or parties, and no mistake of law or fact in a matter of moment appearing, of which the approving of the court should be evidence,' — .1 should hold, I say, such award conclusive. I say, no mistake of law or fact in a matter of moment. The phrase plain mistake, I cannot comprehend. For a matter is plain or otherwise, in proportion to the discernment of those who look at it, and the pains they take to examine and investigate. When seen, a point is as visible as a line. It is the magnitude of the error in point of fact, or the principle in point of law affecting to some amount, that must be meant, and this under the maxim de minimis non curat lex. A cent or an hundred in a complex account may not justify the unsettling *216 the liquidation, or a mistake in a point of law, that can affect ’to the amount of this, may not constrain the court to set aside-what has been done by judges of the parties own choosing, and a tribunal to be favoured by the law. I wish therefore we could get quit of this term, plain mistake ; for all things are plain to those that see well, and nothing-is plain to those that are dull of vision. I would have the term refer to the bulk, and not to the optics of them who look at the object. But it may be said, that the criticism is of little moment. I do not think so, for clear expression of an idea in any science, leads to a clear conception by others. But this by the bye; I return to the case before the court.
• It is only in the case of a reference in an ejectment there can be the least show of reason, why an award should not conclude when approved by the court. And this on a reason drawn, not .from the nature of the case and the understanding of the parties, but from a provision of an act of assembly in the case of a verdict to which, to some extent, there is an analogy. Let the question be put in one’s mind to the legislature, and let them be asked, when you give two out of three verdicts in ejectment, did you mean, that when the parties entered the rule by consent and chose their own judges, this should be extended to two out of three awards by referees ? I think it must be answered not. But I admit, that a fortiori if possible, in a reference at common law, there is not even the show of artificial reason or pretence of analogy to a verdict and judgment not being conclusive in an ejectment, and therefore in the case of Dixon v. Moorhead, I laid stress upon it, that it was a reference at common law, and so involving no difficulty, but keeping clear of all embarrassment on that ground. Notwithstanding this decision therefore, or any countenance it may have received from any thing said in other cases as to the effect of a reference in an action depending, I must agree to differ with the court here, and affirm tiie judgment of the court below.
Judgment for the plaintiff.