The opinion of the court was delivered by
Tilghman, C. J.
This was an action of trespass, brought by David Havard, the plaintiff below, against Davis and Kugler, the plaintiffs in error, for breaking and entering his close, with force ánd arms, &c., and cutting down his trees, &c. The plaintiffs pleaded, not guilty, and liberum tenementum, &c., to which the plaintiff replied, “ freehold in himself,” and issues were joined.
The dispute was concerning a boundary line, and the defendants gave in evidence an agreement between Benjamin Havard, under whom the plaintiff claimed, and themselves, to submit the location-of this boundary line to the arbitrament of three men, whose award was to be considered as fixing the said boundary line for ever. The parties to this agreement bound themselves respectively to each other in the sum of-five hundred dollars, to abide by the award of the arbitrators. The defendants also gave in evidence an award in writing, made by the three arbitrators under their hands and seals, which was recorded in pursuance of the. said agreement. The principal question on the trial was, whether the submission and award were conclusive on the plaintiff. If conclusive, the cause was with the defendants, who had entered and cut the trees, on their own side of the line established by the award. The President of the Court of Common Pleas charged the jury, that the submission and award were evidence for the defendants, but not conclusive; to which charge the counsel for the defendants excepted.
The question resolves into two points:—1. Whether the title to land can be bound by an award. 2. Whether chancery will decree a specific execution of such an award.
1. On the first point, the courts do not seem-to have held a uniform opinion. It is certain^ that an award cannot make an actual transfer of the title to land, and therefore, it appears in some of the old cases, an inference was falsely drawn that it was not conclusive on the title. Supposing that in strict law it was so, it did not follow that equity would not decree á specific performance, after which the award would become conclusive. No agreement short of a conveyance can make a transfer of land, yet it is the daily business of chancery, to compel the performance of such agreements ; and with us, who have no chancery, a decree for- specific performance is considered as made in all cases where a chancellor would make it. No satisfactory reason has been given, why the proprietors of land should not have as much power to bind the title by an award, as the title to personal property. The same policy which permits one, is applicable to the other; and indeed the fluctuation Of sentiment on'this subject seems at length tó have settled down into an opinion conformable to common sense,—that the *170 owners of property, either real or personal, may submit the title to the derision of arbitrators, whose award shall be conclusive. Kyd, in his treatise on awards, after mentioning the difficulties which had been raised by the judges in former, times, comes to the following conclusion, (page 61,) ilIt may safely be considered as law, that when the parties'might, by their own act, transfer real property, or exercise any act of ownership with respect to it, they may refer any dispute concerning it to the decision of a third person, who may order the same acts to be done which the parties themselves might do by their own agreement. Therefore, wheel we are told, that an arbitrator cannot make an award of freehold, and that he cannot award the freehold of one man to another, we are to understand these expressions to mean no more than that land cannot be transferred by the mere magic of the words of the award, but that it is necessary the award should order such acts to be done, as would, if done by the voluntary agreement of the parties, amount to a specific transfer.” I believe, that in this short summary, the result of the decisions, down to the publication of Kyd’s treatise, is pretty accurately-stated. But it is- worthy of observation, that in the case before the court, no difficulty about land occurs. No conveyance is ordered to be executed by one party to the other, because there was no occasion for one. Nothing but a question of boundary was submitted to the arbitrators. The dividing line being fixed, the title follows of course. The award is conclusive evidence of the boundary, and, consequently, conclusive evidence that the title of each party always extended to that boundary, and no further.
2. Now, then, as to the second point, why should not chancery compel a specific execution of such an award, as well as of any agreement respecting land ? The agreement here was, that the line established by the arbitrators should be considered as the fixed boundary .for ev.erl The award, then, may fairly be considered as the agreement of the parties to fix the boundary.' Why should either party be allowed to recede from this, any more than from any other agreement ? The circumstance of their having bound themselves in a penalty to abide by the award, for the recovery of which an action at law may be maintained, is of very little weight. The same objection-arises in many cases, where a specific performance is decreed. The intent of the parties was, to settle all disputes touching the boundary-, which intent cannot be carried into effect by an action for the penalty. Whatever might be the result of that action, the original dispute would still remain unsettled. Chancery, therefore, would go to. the root of the evil, and fix the boundary according to the award, which would make an end of all disputes. I think the law is well settled, that a specific execution of an' award concerning the’ title of land, will be decreed in equity. In 1 Madd. Ch. 401, it is said to be clear, that a bill will lie for the specific performance of an award, even though the ward be *171 unreasonable, the arbitrator being a judge of the party’s choosing, and the award being considered as ascertaining the terms of a previous agreement. But though, if the award decide any thing to be done respecting land, the court, it seems, will decide a specific performance, it will not execute an award for the payment of‘money. In Bishop v. Bishop, 1 Ch. Rep. 142, and Hall v. Hardy, 3 P. Wms. 187, a.specific performance of awards concerning land, was decreed. In these two cases the plaintiff had performed some part of the award. But in Norton v. Moscall, 2 Vern. 24, where a similar decree was made, no part of the award had been performed. All that the plaintiff had done, was the selling off a piece of land -in order to raise a sum of money which he was ordered by the award to pay to the defendant. And in this case the award was so badly drawn, as not to be binding at law. So that part performance by the plaintiff does not seem to be essential for the support of his bill. Nor is there any reason why it should be considered as essential, provided the plaintiff holds himself ready to perform his part. The case of Sellick v. Sellick, decided by the Supreme Court of New York; (15 Johns. 197,) is directly in .point. It was there held, that an award fixing a boundary line of land between the parties to the submission, was á justification in an action of trespass brought against the party who entered and •cut trees, on his own side of the line fixed b'y the award. In Bouk v. Willer, 4 Johns. Ch. 405, Chancellor Kent corrected what he considered as a clear clerical error, in ad award concerning land, and decreed a specific performance. In Shackalford v. Purket, 2 Marsh. Rep. 470, it was decided by the Court of Appeals of Kentucky, that although an award cannot convey the title of land, still it is binding on the parties, and estops them from disputing the title affirmed by the award. But the counsel .for the plaintiff in the present-case, relied on the decisions of our own courts; so that it became necessary to review the Pennsylvania cases. The strongest in favour of the plaintiff, is Dixon’s Lessee v. Moorhead, tried before M'Kean, C. J., and Smith, J., at Nisi Prius, in Westmoreland county, in Mpy, 1798. That was an award at common law, and it was held not be conclusive as to the title of land. The same question, between the same parties, had come before the Court of Common Pleas of Westmoreland county, at June Term, 1794, when a verdict was given against the award, but a new trial was granted at December Term, 1795, President Addison having changed his mind after the trial, and being of opinion that in his charge to the jury he had not given sufficient weight to the award. For the opinions of Chief Justice M‘Kean and Judge Smith, X entertain a sincere and high respect, but it must be remembered that this was a Nisi Prius .decision, Which we all know is not of the same authority as a judgment in bank. The same judges who have necessarily decided in haste at Nisi Prius, often came tó a different conclusion after a full argu *172 merit in bank. Thus we see, that the opinion of President Addison was altered, after further discussion on a second argument, and more time for mature deliberation. The case of Calhoun’s Lessee v. Dunning, also at Nisi Prius, tried before Shippen and Bradford. Justices, at Carlisle, in May, 1792, appears, according to the report of it in 4 Dali. 120, to have been in direct opposition to Moorhead’s Lessee v. Dixon. Shippen, J., charged the jury, that “although an award could not give a right to land, yet it would settle a dispute either in an ejectment or an action of trespass, and that it had been so decided in the case of Fox’s Lessee v. Franklin,” of which no report has come to my knowledge, cither in print or in manuscript. It is proper, however, to mention, that Yeates,J., in delivering his opinion in Duer v. Boyd, 1 Serg. & Rawle, 213, said, “that he had se'en the notes of Judge Shippen, in Calhoun’s Lessee v. Dunning, which contained the arguments of the counsel, but not the opinion of the court; and that he was strongly inclined to think that implicit confidence was not to be placed in the accuracy of the report in 4 Dall.” It is to be regretted, that Judge Yeates did not ascertain what the opinion of the court really was, because his remarks have thrown a cloud over the ease of Calhoun v. Dunning, which it is impossible now to dispel. The only instance in which.the efficacy of an award respecting the title to land, has been brought directly before the court sitting in bank, was in the ease of Duer v. Boyd, &c., 1 Serg. & Rawle, 201. It was there decided, that an award made undér a rule of court, entered in an action of ejectment, under the act of 1705, was not conclusive, but had just the .same weight as a verdict in an ejectment. The reason of that decision was, that the act of 1705 gives.to the award the same efficacy as if it were a verdict, and judgment is entered on it as on a verdict. It could therefore have no greater weight than a verdict in ejectment, which certainly is not conclusive. When a rule of reference is entered in an ejectment, under the act of 1705, it must be presumed that both parties know the law, and therefore could not have intended that the award should have a greater effect than a verdict. . That was my opinion in Duer v. Boyd, but I expressly avoided committing myself as to the effect of an award at common law. These are all the Pennsylvania authorities^ and I consider them as leaving undecided the question now before us; which is,-whether an award of arbitrators, under a submission at common law, fixing a boundary line between the parties, be, or be not conclusive Feeling myself at liberty to exercise my own judgment, I am of opinion, for the reasons before given, that the award is conclusive. There was error, therefore, in the charge of the court-, for which the judgment "is to be reversed, and a venire de novo awarded.
Judgment reversed, and a venire facias de novo awarded.