[PHILADELPHIA, FEBRUARY 2ND, 1839.]

## LEVERING *against* RITTENHOUSE and Another.

### IN ERROR.

1. In an action brought by the administrator of a deceased grandchild against the administrator of the grandfather, to recover a distributive share of the personal estate of the latter, an account in the handwriting of the deceased parent of the grandchild, is evidence to show the indebtedness of such deceased parent to the grandfather.

2. In such action declarations by the deceased grandfather are not evidence to establish the indebtedness of his son, unless made in the hearing of the son.

3. Parol declarations of a deceased parent, tending to show that a child had been advanced by him, made in the absence of such child, are not admissible to charge such child, without some evidence *aliunde* of the fact of the receipt of money or other thing by the child.

4. A debt from a child to a parent, which has been barred by the statute of limitations, cannot be converted by the parent into an advancement, by his declarations to that effect, without the assent of the child.

5. A loan or payment by a father to or for a son, may be considered as a debt and not an advancement, although no security be taken for it. Where money is lent or paid in such case to or for a son, at the request of the latter, and an account is stated by the father and interest charged, such loan or payment is to be considered a debt and not an advancement.

6. If a surety pays the debt of his principal, after the death of the latter, and when no letters of administration have been taken out upon his estate, the statute of limitations does not begin to run, until letters of administration are taken out.

7. A plaintiff may avail himself of the statute of limitations against a set-off given in evidence by the defendant, without pleading the statute in any way.

8. Declarations made by an agent at the time of paying money, showing on whose account and behalf the money was paid, are admissible as part of the *res gestæ*.

THIS was a writ of error to the District Court for the City and County of Philadelphia, to remove the record of an action on the case brought by Silas G. Levering, administrator of the goods, &c., of Joseph Rittenhouse, deceased, against Nicholas Rittenhouse, and Jacob D. Rittenhouse, administrators of the goods, &c., of Martin Rittenhouse, deceased.

The plaintiff declared in assumpsit, and the defendants pleaded *non assumpserunt* and payment, &c., on which issues were joined.

The action was brought to recover a distributive share of the personal estate of Martin Rittenhouse, deceased, the grandfather of the intestate, Joseph Rittenhouse, whose father (also named Joseph) was supposed to have died in the lifetime of Martin Rittenhouse, the grandfather.

On the trial before STROUD, J., on the 18th of January, 1836, the plaintiff gave in evidence the inventory and appraisement of the personal property of Martin Rittenhouse, deceased, as filed in the office of the register of wills, &c., for the city and county of Philadelphia, and the final account of the defendants, as administrators to the estate, settled in the same office, showing a balance for distribution of twelve thousand nine hundred ninety-nine dollars, and two cents. It was admitted that the plaintiff had made demand and tendered a refunding bond, agreeably to the act of assembly.

The plaintiff's counsel then called John Knorr, a witness, who testified as follows:

"I knew Martin Rittenhouse: he lived in Roxborough, and died there; I can't tell when, but I think about seven or eight years ago, in 1828, or thereabouts; his children were, Joseph, Nicholas, William, Elizabeth, Jacob, Sarah, Susan, and Martin. William died before his father, unmarried, and without issue ; a good while ago. It appeared that Joseph left these parts a great many years ago, before his father died. I understand his brother William went to see him in Virginia more than twenty years ago. I used to hear the old man say it was his impression that Joseph was destroyed at the time of the burning of the theatre at Richmond. Joseph left three children, Susan, Mary, and Joseph. Joseph (the grandson) died two or three years ago last Christmas." Being cross-examined, the witness deposed. "It was only an impression on the old man's mind, that Joseph was destroyed at the burning of the theatre at Richmond. It is a good while since William visited him in Virginia. It was before the burning of the Richmond theatre, that Joseph was heard of."

The plaintiff's counsel then gave in evidence the letters of administration granted to Silas G. Levering, on the estate of Joseph Rittenhouse, in due form of law, dated the 22d June, 1833, and then closed his case.

The defendants' counsel, then opened the case on their part, and alleged that Joseph Rittenhouse, the father of Joseph Rittenhouse, had been advanced by the intestate, Martin Rittenhouse, in his lifetime, more than his share of the estate, and a much larger sum than he would have been entitled to if living when the intestate died: that the intestate always said that Joseph Rittenhonse had received more than his share of the estate, and more than he could give any of his other children. To support which allegations, the defendants' counsel then offered in evidence a bill or memorandum, admitted to be in the handwriting of Joseph Rittenhouse, in which he was charged as debtor with several sums of money, as due to Martin Rittenhouse, which was objected to by the plaintiff's counsel; but

(Levering *v.* Rittenhouse.)

the objection was overruled by the Court, and the paper was read in evidence; to which the plaintiff's counsel tendered his bill of exceptions. The defendants' counsel then offered in evidence an account stated between Martin Rittenhouse and said Joseph Rittenhouse, dated 19th August, 1794, admitted to be signed by Joseph Rittenhouse, which was objected to by the plaintiff's counsel; but the Court overruled the objection, and the account was read in evidence; to which admission the plaintiff's counsel tendered his bill of exceptions.

The defendants' counsel, for the same purpose, then offered in evidence a receipt in the handwriting of Joseph Rittenhouse, with the endorsements thereon in the handwriting of the intestate, dated January 10th, 1795, which was also objected to by the plaintiff's counsel and the objection overruled, and the receipt read by the defendants in evidence; to which admission the plaintiff's counsel tendered his bill of exceptions. The receipt and endorsement were as follows:

" Received, January 10th, 1795, of Martin Rittenhouse, a note of Mr. Peter Care to Henry Pratt, and endorsed by him, for fifteen hundred and ninety-four dollars and sixty-seven cents, dated 10th inst, '95 a sixty days.      (Signed)

JOSEPH RITTENHOUSE."

Endorsed—" Received March 26, 1795, of Joseph Rittenhouse, on account, twelve hundred dollars, £450."

The defendants' counsel then offered in evidence a bond given by Joseph and Jacob Rittenhouse, to John Johnson, dated the 17th of September, 1792, in which Jacob Rittenhouse was surety, with the endorsements thereon; to which the plaintiff's counsel objected, but the Court overruled the exception, and the defendants read the same in evidence; to which admission the plaintiff's counsel tendered his bill of exceptions.

The defendants then, for the purpose of showing the indebtedness of the said Joseph to the intestate in his lifetime, and the advances made by the intestate to Joseph, offered in evidence an indemnity bond given by the said Joseph Rittenhouse and the said Martin Rittenhouse to the said Jacob, with the view of showing that the original bond was paid by Martin Rittenhouse for the said Joseph Rittenhouse.

To which last-mentioned bond the plaintiff's counsel objected; but the objection was overruled by the Court, and the same was read in evidence; to which admission the plaintiff tendered his bill of exceptions.

(Levering v. Rittenhouse.)

The defendants' counsel then offered to prove by a witness, that the said bonds were paid by money lent to the said Joseph, by Martin Rittenhouse, by his, Martin's, own declarations in relation thereto, made after the supposed death of said Joseph Rittenhouse, at various times, and were advancements.

To which evidence the plaintiff's counsel objected; but the Court overruled the objection, and the plaintiff tendered his bill of exceptions; and the witness proceeded as follows:—

"I heard my grandfather, old Martin, say, that Joseph had got a double portion; that he need not expect to get any more from him; that he had got more than he could give any of his other children. This was when I lived with my grandfather sometime, two years before his death. I saw Joseph Rittenhouse, the doctor, come to my father's house several times. They were talking about some writings for some New Orleans property. Young Joseph came to see if he could recover any thing. Grandfather gave him the writings: he kept them some time and returned them and said, it was too late, he could do nothing with them. And grandfather said he had given his father more than he could give either of the other children, and he need not expect any thing from him."

The defendants' counsel then called one Enoch Rittenhouse, who being duly affirmed deposed as follows:—

"I was a cousin of old Martin Rittenhouse: I was acquainted with him; and lived about a hundred yards from him. Mr. Nicholas Rittenhouse transacted business for his father about the year 1812. The indemnifying bond was in Jacob's hands, and after Jacob's death it came into my hands. I was one of Jacob's executors. Nicholas paid it: he paid the original bond, and I gave the indemnifying bond to him. He acted for his father. Joseph was not in this part of the country at that time that I can recollect. Nicholas had his father's mill."

The defendants' counsel then asked the witness to state what Nicholas said when he paid him the indemnifying bond, in respect to his being the agent or not, of his father, in paying the original bond. To which interrogatory the plaintiff objected, but the Court overruled the objection; the plaintiff took his bill of exceptions, and the witness proceeded as follows:—

"Nicholas said at the time when he brought the original bond, at the time of the receipt in the year 1812, that he paid it for his father."

The defendants' counsel then gave in evidence the record of the Orphans' Court of the County of Philadelphia, showing that the above-mentioned administration account settled by the defendants

as administrators of Martin Rittenhouse, deceased, had been confirmed by the Orphans' Court nisi, and that no exception thereto had been filed.

After the evidence was closed, the plaintiff's counsel requested the Court to charge the jury as follows :—

" That the law in this case does not presume that it was an advancement and not a debt."

Upon which point the judge charged the jury :—

" That it is presumed by law, in the absence of any proof one way or the other, that money given by the father to the son, where no security is taken for it, is an advancement.   The taking of a security by the father of the son would repel this presumption."

The plaintiff's counsel also requested the Court to charge :—

"ʰThat if a debt due from Joseph to Martin, it is barred by the statute of limitations, and it is not necessary to plead the statute."

To which the Court answered :—

" That it may be barred if a debt, and the statute need not be pleaded."

The plaintiff's counsel also requested the Court to charge :—

" That in the absence of clear proof, if it was a debt, the law from the length of time will presume it was satisfied."

To which the Court answered :—

" That if it be a debt, it can be barred by time; but the jury must take all the circumstances into consideration, that Joseph had been absent nearly all the time."

The plaintiff's counsel excepted to the charge, and the jury having found for the defendants, a writ of error was taken, and the following exceptions filed :—

" 1. Because the Court in this suit admitted as evidence of the debt of Joseph Rittenhouse, the father, an account in his handwriting where the administrators of the grandchild were the party.

2. Because the Court admitted the declarations of Martin Rittenhouse, the grandfather, the defendants' intestate, as proof of the indebtedness of Joseph Rittenhouse, the son of the defendants' intestate; and the father of the plaintiff's intestate; such declarations having been made by the said Martin Rittenhouse, after the death of his son Joseph Rittenhouse.

3. Because the Court admitted the declarations of the said Martin

Rittenhouse made after the death of the son, the said Joseph Rittenhouse, to prove that moneys paid by the father, were an advancement and not a debt.

4. Because the Court admitted in evidence the declarations of Nicholas Rittenhouse, at the time he acted as the agent of Martin Rittenhouse; the said Nicholas being one of the heirs, and interested to defeat the plaintiff's claim.

5. Because the Court decided that in the absence of any proof, and no security being taken, the presumption of law was, that it was an advancement and not a debt."

Mr. *Randall*, for the plaintiff in error.

1. It was decided in *Earnest* v. *Earnest*, (5 *Rawle*, 213,) that in an action by the grandchildren of an intestate, against the administrator, to recover a distributive share of the estate accruing to them in right of their parent, the defendant may set off a debt due by the parent of the plaintiff to the intestate; but it by no means follows that the declarations of the deceased parent are admissible evidence against his children. The rule is, that when you claim *under* another person, the declarations of such person while the property was in him, are admissible to charge you; but it has never gone beyond this. If the principle adopted in the District Court be admitted, a parent may disinherit his child, though he never had any estate in himself. Grandchildren take directly from the grandparent, not mediately through their parent; otherwise, the creditors of the deceased parent, would have a lien on his property. The rule as to admissions is found in 2 *Starkie's Evid.* 26.

2. Nor were the declarations of the grandfather admissible as proof of the indebtedness of his son. It is true, that it was decided in *Hengst's Estate*, (6 *Watts*, 86,) that entries made by the father in a book, of advancements to a child are proper evidence; but they were put on the same footing as if they were of a testamentary character. In this case, nothing but loose conversations were offered. The custom of London as to advancements, is to be found in 2 *Bac. Abr.* 252. *Faulkner* v. *Watts,* (1 *Atkyns,* 406.)

3. The declarations of Martin Rittenhouse, made after the death of the son, ought not to have been admitted, because he was interested to prove the payments to or for his son to be advancements. If debts they were barred by the statute of limitations.

4. The declarations of Nicholas Rittenhouse ought not to have been admitted, because he was not the agent of Martin to declare whether he intended the payment as an advancement or otherwise.

5. The cases on the subject of advancements are not very numerous or satisfactory. The presumption of law laid down by the learned judge, is not to be found in the books. In this case there was an account stated by the father, which could only have been done on

the footing of a *debt.* The bond was another evidence of debt, not of advancement. *Gilbert* v. *Wetherill,* (2 *Sim. & Stuart,* 254; S. C. 1 *Eng. Chan. Rep.* 444.) *Hatch* v. *Straight,* (3 *Conn. Rep.* 31.) *Clark* v. *Warner,* (6 *Conn. Rep.* 355.) *Wentz* v. *Dehaven,* (1 *Serg. & Rawle,* 212.)

Mr. *Rawle,* for the defendants in error.

This case is substantially decided in *Ernest* v. *Ernest;* since if the debt of a son can be set off against the shares of grandchildren, they must be taken to claim through him. The act of 1794, section ix., requiring advancements to be brought into hotch-pot, includes grandchildren in its terms. Decisions on the custom of London respecting advancements are not applicable here. Parol declarations of an advancement made by a freeman of London, will not be admitted, because it would tend to increase the legatory part of his estate, as he can dispose of only part of it by will. 2 *Bac. Abr.* 252. *Cleaver* v. *Spurling,* (2 *P. Wms.* 527.) 1 *Madd. Chan.* 530. In *Patton* v. *Patton,* (17 *Serg. & Rawle,* 338,) it was held that evidences of debt may be considered as advancements, and so treated by a paper not of a testamentary character. *Sampson* v. *Sampson,* (4 *Serg. & Rawle,* 329.) As to the statute of limitations, the large debt was certainly not barred. The statute must be replied to a plea of set-off. 1 *Chitty's Pleadings,* 473. 2 *Chitty,* 493. *Jones* v. *Moore,* (5 *Binn.* 576.) *Boggs* v. *Johnson,* (2 *Rawle,* 102.) Here the grandfather released the son from a debt he owed to him, and converted it into an advancement. In *Ansley* v. *Bainbridge,* (1 *Russel & Mylne,* 657, S. C. 4 *Eng. Chan. Rep.* 602,) an assumption by a father of a debt due by his son to a partnership, in which the father and son with other persons were partners, was deemed an advancement of a portion to a less amount, to which the son would have been entitled upon the father's death. 2 *Story's Equity,* 445, 446, § 1202, 1203.

The opinion of the Court was delivered by

KENNEDY, J.—The Court below decided correctly in admitting the evidence mentioned in the first bill of exception, showing that Joseph Rittenhouse, the son of Martin Rittenhouse, and father of the plaintiff's intestate, was indebted to Martin Rittenhouse, the grandfather of the same. This suit, it must be observed, is brought by the administrator of the grandson, to recover from the grandfather's estate a part, to wit, one-third, of that portion of the grandfather's personal estate, to which Joseph, the father of the plaintiff's intestate, would have been entitled, had he survived his father, Martin Rittenhouse, the grandfather of the plaintiff's intestate. Joseph Rittenhouse, the intestate of the plaintiff, being one of three children of Joseph, the son of Martin, could only claim, at most, one-third of what his father

(Levering v. Rittenhouse.)

would have been entitled to receive from his father's personal estate, in case he had outlived him; his two sisters being entitled to the other two-thirds. But according to our intestate law, the grand-children are only entitled to such proportion of the grandfather's personal estate, as their father would have had a right to, had he survived the grandfather. The grandchildren derive their right *through their father*, and therefore, whatever would have reduced or have barred his recovery, will in like manner reduce or bar the recovery of his children. For instance, if the father of the grand-children stood indebted to his father's estate, he could not seek to recover his full portion of his father's estate, without first paying the debt owing by him to it. If he did not, then the debt owing by him, if only equal in amount to part of what might be coming to him from the estate, might be defalcated, or if equal to the whole of his portion, his recovery might be barred entirely by a set-off. The grandchildren, in this respect, stand in the same situation as their immediate parent; and consequently their claim is obnoxious to be reduced by a defalcation, or barred by a set-off of their parent's debt, in the same manner, as if the parent had survived and brought the action. This principle was settled by this Court in the case of *Earnest* v. *Earnest*, (5 *Rawle*, 213.) The evidence stated in the first bill of exception was therefore properly admitted, though the effect of it may be rendered unavailing by the statute of limitations.

The second error, which is an exception also to evidence, does not seem to be well founded in fact; because it does not appear that the declarations of Martin Rittenhouse, the grandfather, made after the death of Joseph, his son, were either offered by the defendant below, or admitted by the Court for the purpose of proving the indebtedness of Joseph to him. If they had, whether Joseph were dead or living at the time, they would not have been admissible, unless made in the presence and hearing of Joseph his son. A father can no more make his child a debtor to him, simply by declaring it to be so, than he can a stranger: nor will his declarations of the fact of indebtedness be evidence in the one case, more than the other.

The third error is an exception to the admission, in evidence, of the declarations of the grandfather, made long after the death of Joseph his son, tending to prove that Joseph had been advanced by him, to an amount greatly exceeding his portion of his father's estate. Such verbal declarations, without other evidence, showing the fact of Joseph's having actually received money or other thing of value, and what it was that he had gotten, would be no evidence of advance-ment: to admit it would be attended with dangerous consequences, and tend to work great injustice oftentimes, among children, in the distribution of their parents' estate. It would seem to militate against both the statutes of frauds and of wills; because, in effect, it would be putting it in the power of the parent, to deprive some of his children from all participation in his estate, by mere word of

(Levering *v.* Rittenhouse.)

mouth, when by the statute of frauds, he cannot part with his real estate in his lifetime, unless by writing, signed by him; nor by will can he dispose of either personal or real, except it be made in writing. But if verbal declarations of the parent, that he has advanced any one or more of his children to the full value of his estate, were to be received as competent evidence of the fact, without other evidence showing what the advancement consisted of, together with the real value of it, it is perfectly evident that it would go to take every part of the estate from the children so declared to be advanced, and to give the whole of it to the others, without even the least foundation in equity for it. When evidence has been given, tending to prove that a child had received money to any amount, or other thing of certain value, from his or her parent, the declarations of the parent generally may be evidence to show *quo animo* the money or other thing was advanced. Or in case of a subsisting debt, owing by the child to the parent, and proved to be so by competent evidence, not by the declarations of the parent, however, unless made in the presence and hearing of the child, the declarations of the parent may be given in evidence on the part of the child, to show that the parent had released the debt by declaring that it should be considered as an advancement. This was decided in *Wentz* v. *Dehaven*, (1 *Serg. & Rawle*, 212.) And upon this ground alone, do we consider what is said there in regard to a release being good without a consideration, as being in anywise tenable. Because a release by parol must have a consideration to support and render it available, otherwise it must be regarded as a nullity, and no more binding than a promise by parol, without consideration, would be. The relationship between parent and child being such, as in some degree to make it the duty of the former to assist the latter, and to advance him in the world, according to the ability of the parent and exigencies of the child, supplies the requisite consideration for the support of the release in such case, when assented to by the child, which may be either express or implied, by his not paying the debt afterwards. But then the debt must be a subsisting debt at the time of the parent's declaration of his resolution or intention to make it an advancement. That is, the debt must be such as the parent has a legal right to demand and sue for, either then or at some future day, when it shall become payable; and not a debt that has been extinguished by payment; or that has been released, unless for the purpose of converting it into an advancement; or that is barred by the statute of limitations; for a debt barred by the statute of limitations is regarded as one presumed by law to have been paid, unless the debtor himself shall declare otherwise. Then in the present case, as evidence in writing, under the hand of Joseph, the son, had been given by the defendant, showing that Joseph was indebted to his father, Martin Rittenhouse, the declarations of the latter, if intended by him to have reference to the indebtedness, so proved of

(Levering *v*. Rittenhouse.)

his son, and the indebtedness actually continued at the time to exist, would have been sufficient in law to have released the debt, and to have converted it into an advancement; but whether in making the declarations proved, the father had a reference to the debts proved to be owing to him at one time by Joseph, was a fact to be referred to the decision of the jury. These declarations of Martin, the father, however, could have no operation or effect whatever on the balances appearing to be due to him from Joseph, according to the accounts between them, as stated and signed by Joseph; because the last statement appears to have been made as early as 1794; so that the debt apparently due upon the face of it, was barred by the statute of limitations seven times over and more, before the declarations of the father were made, stating that Joseph " had got a double portion, and that he need not expect to get any more from him." They were made, according to the testimony of the witness, about two years before the death of the father, which event took place in 1828. So in regard to any money that may have been received by Joseph on Peter Care's note, the statute of limitations had greatly more than run there also; hence the father's declarations, as to this, whether he intended to refer to it or not, were wholly inoperative. Then the only claim or debt, which, from the evidence, Martin, the father, could have had against Joseph his son, at the time, that could be said to be in force, or have an existence, was the money which he paid as his surety, to John Johnson. This money, from the evidence, it would seem, was paid in 1812; but whether before or after the death of Joseph, does not appear. If paid before Joseph's death, then it was barred also by the statute of limitations, because the statute commenced running from the day it was paid, if paid in the lifetime of Joseph; and having commenced running, his subsequent death would not stop it. But, if Joseph was dead, at or before the time his father paid this money, and no letters of administration were ever taken out upon his estate, then the debt remained in force at the time of the declaration made by the father; because, there never having been any person such as an executor or administrator, in being, of whom this money, which had become a debt against the estate of Joseph, could be demanded, or who could be sued for it, the statute of limitations never could be said to have commenced running, and consequently could form no bar. It is only where the creditor may, and has a right to sue, that the statute commences running; but, as soon as that moment shall have arrived, it commences, and nothing can interrupt or prevent its running afterwards. See *Stanford's Case*, (5 *Co.* 123,) cited also in *Saffyn* v. *Adams*, (*Cro. Jac.* 60-1,) which see also. *Cary* v. *Stephenson*, (*Salk.* 42; S. C. nom. *Curry* v. *Stephenson*, *Carthw.* 335; *Skin.* 555.) *Hickman* v. *Walker*, (*Willes Rep.* 29.) The *East India Company*, v. *Murray's Admr.* (5 *B. & A.* 204.) *Geiger* v. *Brown*, (4 *M'Cord*, 423.) The Richmond theatre, it is said was

burned down in 1812, when it is conjectured Joseph, the son, lost his life: but whether that event happened before or after the payment of the money to Johnson, does not appear. The time of Joseph's death, as also that of the payment of the money to Johnson by Nicholas, on behalf of the father, are facts to be submitted to the jury, to be decided by them, according to the evidence which shall be adduced and given on the next trial.

The defendants' counsel endeavoured to make it a question, whether a party can take advantage of the statute of limitations, excepting where he has it in his power to plead it; and seemed to intimate that the affirmative of this question might be true; and if so, the plaintiff here could not avail himself of the statute; because it was not practicable for him to have it introduced into the pleadings in any shape or form. This however is altogether untenable; because it is every day's practice in some parts of the state, where the plaintiff in prosecuting his action for the recovery of a debt, owing to him by the defendant, is met, without any plea of set-off being put in, but under the plea of payment, as he may be, by the express provision of our defalcation act, with a claim from the defendant of a simple contract debt, owing to him at one time by the plaintiff, of more than six years' standing before the commencement of the action, to interpose the statute of limitations against it by his verbal allegation made before the Court and jury without putting any thing on the record in regard to it. In England a defendant, to avail himself of a set-off against the plaintiff's demand, must plead it, so that if it be barred by the statute of limitations there, the plaintiff may very properly set up the statute by way of replication to defeat it: and this may be the legitimate course for the plaintiff to adopt and pursue in such case. But here by the express terms of our defalcation act, the defendant may give a set-off in evidence under the plea of payment, which plea does not admit of such replication, without a seeming impertinence or irrelevancy. Some of the Courts however, if not all in the state, have established a rule, that when the defendant intends to give such evidence under the plea of payment, he shall give the plaintiff previous notice of it, in order to prevent surprise.

There is nothing in the fourth error: nor has it indeed been insisted on. The declaration of Nicholas Rittenhouse, made at the time he paid the money, stating that it was the father's money, which he was paying the debt with for the father, being part of the *res gestæ* was clearly admissible as evidence of the fact: and being introduced, to show that the money was in fact paid by the father, when the receipt taken for the payment of it, by Nicholas, stated it as received of the latter, without any mention of the father at all, rendered it quite important as well as pertinent.

The fifth error which is the last, is an exception to the charge of the Court delivered to the jury, in answer to a point submitted by

(Levering *v.* Rittenhouse.)

the plaintiff's counsel, requesting the Court to charge the jury, "That the law in this case does not presume that it was an advancement and not a debt." In reply to this, the Court instructed the jury, "That it was presumed by law, in the absence of any proof one way or the other, that money given by the father to the son, where no security is taken for it, is an advancement. The taking of a security by the father of the son would repel the presumption." This instruction of the Court, does not appear to be correct, taken in the sense in which we are inclined to think the jury must have understood it. It is impossible, almost, to avoid the conclusion, that the jury were led to believe by it, that whenever a father paid money for a son as his surety, or lent him money without taking a bond, bill, note or such like security for the repayment of it, it was regarded in law as an advancement. But this cannot be so, for if a son ask his father to lend him a sum of money, and the father does so, without saying more, or any thing about the repayment of it, or of taking a security of any kind for its repayment, it becomes a debt upon loan, and not an advancement; and the law in such case, it being a debt, implies a promise to repay immediately. So if a father becomes surety for his son in a bond, and pays it, without saying any thing about it, the son thereby becomes his debtor; and the law raises a promise on the part of the son, to pay the father immediately. If a father, however, without being solicited by the son, gives him a sum of money, without saying on what account or wherefore he does so, or pays a debt for him, it will be considered a gift or advancement to the son. But if a father advances money to a son upon the *request* of the latter to *lend* it to him, or pays money for the son, either at his *request* or as his *surety* in a bond given by the son and him, the son becomes as much a debtor to the father in such cases, as if he were a stranger, because the form and nature of the transaction, in each of those cases, negatives the idea of a gift, and yet no *security* is given by the son for the repayment of the money, nor any thing expressly said about it. There is also an objection to the charge of the Court on this point, in another view of it. The counsel did not request the Court to charge the jury on the point as upon a mere abstract question of law, but in reference to the case there as it appeared in evidence to the jury. The evidence showed most clearly, without even the least semblance of contradiction, that the moneys which passed between the father and son, were considered by them, as creating *debits* and *credits;* and that all moneys advanced or paid by the father for the son were to be accounted for and repaid by the son to the father.

The account between them, being stated and kept in the form it was, left no ground for a presumption that the moneys charged in it against the son, were an advancement and not a debt: and what seemed to render it most conclusively so, is the charge of interest made therein against the son, upon the moneys received by him of,

(Levering *v.* Rittenhouse.)

or advanced for him by his father, which is wholly incompatible with the notion of its being considered by the parties at the time as an advancement. For aught that appears to the contrary, the father had the right to, and might have sued the son, for the balances in his favour upon the accounts as stated, and would have been entitled to a judgment therefor against him. So, for the money paid by the father, as surety of the son to Johnson, if the son were then living, the father might have maintained a suit against him immediately for it; because it was clearly a debt, as has been shown above: so that the Court below, in reference to this case, as it appeared in evidence, ought, in order to have met fully the request of the counsel for the plaintiff, to have told the jury, that the evidence showed without contradiction, that all the moneys advanced or paid by the father, Martin Rittenhouse, to or for his son Joseph, were either moneys lent or money paid at the special request of the son, which the father from the evidence, might have compelled the son to have repaid, if he were able; and were therefore to be considered as debts owing by the son to the father; and could not be presumed or considered to have been an advancement at the times respectively of their being given to or paid for him. The judgment must be reversed and a *venire de novo* awarded.

Judgment reversed and a *venire de novo* awarded.