# Foust *against* Ross.

In an action of ejectment against one who enters without right, if the plaintiff show that the title to the land in dispute is out of the commonwealth, that taxes were assessed upon it, and that he holds a deed of the sheriff who sold it for the non-payment of taxes previously to the Act of 1815, it is such a *primâ facie* title as puts the defendant to the necessity of showing a better right; which if he fail to do, the plaintiff is entitled to recover.

To recover upon a title founded upon a sale for taxes prior to the Act of 1815, the plaintiff must show a strict compliance with the requisitions of all the acts of Assembly authorizing sales in such cases, or he must show what would amount to an abandonment of the title by the original owner; and if it appear that such original owner had not looked after the land, and had not paid any taxes for it for upwards of twenty-one years, it would amount to an abandonment, and the holder of the tax title would be entitled to recover upon it against one who showed no title, and was a mere intruder.

In an action of ejectment, upon the trial of which the defendant gave no evidence, but relied upon the insufficiency of the plaintiff's evidence in support of his title, it is not error in the court to instruct the jury that it is sufficient to entitle him to recover.

A sheriff's deed, with a certificate endorsed upon it under the hand and official seal of the prothonotary, that it was duly acknowledged in open court, and entered of record, is *primâ facie* evidence without showing the record.

ERROR to the Common Pleas of *Luzerne* county.

William Ross against George Foust. Ejectment for a tract of land. The plaintiff, to maintain the issue on his part, gave the following evidence:

31st of August 1792, warrant to Mary Custard for 400 acres of land in Luzerne county.

27th June 1793, survey to Mary Custard for 401$\frac{2}{10}$ acres and allowance.

The plaintiff then offered in evidence —

16th of March 1806, oath of Ambrose Tille, assessor of Nescopeck township, Luzerne county.

28th of September 1805, return of judges of election of Ambrose Tille, as assessor of said township.

21st of May 1806, warrant to commissioners of Luzerne county to assessors to assess the township of Nescopeck.

C. W. Potter sworn. I am clerk for commissioners. Papers above-mentioned are filed in commissioners' office. They are from the files of the office.

November 1st 1805, certificate of prothonotary of the election of Elisha Harding commissioner of Luzerne county.

12th of October 1805, return of the judges of election of Elisha Harding as commissioner of Luzerne county.

[Foust v. Ross.]

1806 and 1807, assessments of Nescopeck township of a tract in name of Mary Custard.

To which offer defendant objected; the court overruled the objection, and the defendant excepted.

The above-mentioned papers were then given in evidence.

The plaintiff then offered the following evidence:

"General Advertizer" of Philadelphia, 11th May 1808.

"Luzerne Federalist" of 19th May 1809, with affidavit of editor.

"Democratic Press," Philadelphia, of 15th April 1809, with affidavit of Isaac Frick, publisher of the Democratic Press, of 26 publications.

"United States Gazette," Philadelphia, of 5th April 1809, with affidavit of book-keeper of publication for four weeks, of notice of James Wheeler and Commissioners of Luzerne county, of sale of lands for taxes; the same notice in each paper; no names of owners of land given.

To which offer the defendant objected. The court overruled the objection, and the defendant excepted.

The said newspapers were then given in evidence.

C. W. Potter recalled. I have searched the files in the commissioners' office for warrant from commissioners to Jacob Hart, sheriff, and find none. All the warrants are directed generally to the sheriff of Luzerne county. That is the case with all the warrants. The warrant, dated 1st of July 1807, and the book marked "original sales of James Wheeler, sheriff," were found together. All the warrants I found were also with this book.

Cross-examined—There were three or four warrants found together in book marked "original sales of James Wheeler, sheriff;" schedule was found in the same book. Warrant and schedule were not sealed or attached together; nothing which connected this warrant with the schedule more than either of the others. I found no schedule of lands taxed for 1806.

The plaintiff then offered in evidence schedule marked "original sales of James Wheeler, sheriff, of unseated lands, for taxes 1805–6–7," in which Mary Custard is taxed $14.3½.

To which offer defendant objected. The court overruled the objection. The defendant excepted.

The plaintiff then gave the said schedule in evidence.

The plaintiff then offered in evidence warrant, dated 1st of July 1807, of Benjamin Dorrance, Elisha Harding, and Hosea Tiffany, commissioners of Luzerne county, to the sheriff of Luzerne county.

To which offer the defendant objected. The court overruled the objection, and the defendant excepted.

The plaintiff then gave the said warrant in evidence.

C. W. Potter recalled. I searched for list of lands sold by

[Foust v. Ross.]

Jacob Hart; found none but paper marked Jacob Hart's sale-book 1808 and 1809.

The plaintiff then offered in evidence Jacob Hart's sale-book of unseated lands sold for taxes, containing, *inter alia*, the following entry:

"Custard, Mary, 401¼ acres sold to Silas Jackson."

Also commission of Jacob Hart, sheriff of Luzerne county, dated 22d of October 1807.

Also, the oaths of office and bond of the said Jacob Hart, dated 4th of November 1807.

To which offer defendant objected. The court overruled the objection, and the defendant excepted.

The plaintiff then gave the said sale-book, commission, oath, and bond in evidence.

The plaintiff then offered in evidence the deed of Jacob Hart, sheriff of Luzerne county, dated 7th of August 1809, to Silas Jackson for Mary Custard, 401¼ acres, for the consideration of $14.2; which deed recited a sale by said sheriff, of Mary Custard to Silas Jackson, made in pursuance of the warrant of Elisha Harding, Hosea Tiffany, and James Wheeler, commissioners of Luzerne county, dated 5th of September then last past, (being 5th of September 1808,) for taxes of 1806 and 1807, amounting to $8.2.

And in connexion with said offer, called Chester Tuttle, who being sworn, said: I was former clerk of the commissioners. I am familiar with the papers and records of the commissioners' office. I was the immediate predecessor of Mr Potter. I have made diligent search for a warrant directed to sheriff Hart in 1809, and could find none. The latest I could find was in 1807. Don't recollect of any note on the record of warrant having issued to Jacob Hart. No memorandum of the issuing of warrants to sheriffs in the office.

The defendant objected to the admission of the aforesaid deed of Jacob Hart, sheriff, to Silas Jackson, in evidence. The court overruled the objection, and the defendant excepted.

The said deed was then given in evidence.

5th of April 1811. Will of Silas Jackson, with power to sell, given to his executors.

27th of April 1811. Letters testamentary granted to Joseph Sinton, Charles Miner, and Elizabeth Jackson, executors named in the will.

27th of July 1814. Deed of executors aforesaid to William Ross for the land in the name of Mary Custard.

The plaintiff then gave in evidence receipts for the payment of taxes for the land from 1811 to 1839 inclusive, except for the years 1818–19 and 1823–24.

The plaintiff then offered the following writing in evidence:

"3d of July 1816. William Ross, of Wilkesbarre, claims Mary Custard's 400½ acres."

[Foust v. Ross.]

C. W. Potter recalled. I found the above paper in commissioners' office. Don't know when it was filed. Found it filed with the other claims in the office.

Paper objected to by defendant. The court overruled the objection, and the defendant excepted.

The said paper, dated 3d of July 1816, was then given in evidence.

George W. Williams sworn. In 1836 General William Ross wanted to pay taxes on Mary Custard for 1834 and 1835. I turned to books and found N. Beach had paid the taxes on that tract for 1834 and 1835. General Ross tendered me the money for those taxes.

Elias Hoyt sworn. I have been on the Mary Custard tract. George Foust lives on it. He lives near the north corner of the tract. I re-surveyed it; found the original line and corners. In April 1839, I found all the corners called for.

Chester Tuttle recalled. I think for 1818 and 1819 Mary Custard was not taxed. 1823 and 1824 it was not assessed.

The plaintiff then rested, and the evidence was closed.

The court then charged the jury as follows:

JESSUP, President.—There being in this case no disputed facts, the defendant having shown no title in himself, nor any interest in the land; the plaintiff showing the deed of the sheriff and the other evidence connected with the payment of taxes by him from the year 1811 to 1839 inclusive, is, in the opinion of the court upon the whole case, entitled to recover. The verdict must be for the plaintiff.

To which charge the defendant excepted.

The opinion of the court overruling the objections to the evidence, and in their charge to the jury, was assigned for error.

*M'Clintock* and *Greenough*, for plaintiff in error, argued that the settled law was, that all the prerequisites to a sale for taxes previously to the Act of 1815, must be shown in support of a title: and in this case, it was perfectly clear that such evidence had not been given. It was not proved that the warrant recited in the deed to have been issued by the commissioners to the sheriff had ever existed, or that the persons named were commissioners. Illegal evidence was therefore admitted, and the judgment should be reversed, although this court might be of opinion that the plaintiff was entitled to recover on the merits.

The evidence given was all matter of fact, and should have been submitted to the jury for their determination; but the court directed a verdict for the plaintiff, without submitting the evidence to the jury.

*Kidder*, for defendant in error, whom the court declined to hear.

[Foust v. Ross.]

The opinion of the Court was delivered by

HUSTON, J.—Previous to the Act of 1815, the courts in this state had decided, that in showing title to lands sold for taxes, the purchaser must at the trial show that every step directed by the Acts of Assembly for assessing, advertising, and selling lands not inhabited, and for which the owners had not paid the taxes, must be literally and strictly complied with. These requisites, thus called for, were so numerous, and the evidence that they had been complied with, was so various, and, none of it being on record, so liable to accident and destruction by those interested, that it was supposed no title so acquired could be valid. It was also liable to this inconvenience, that the older the title, the more difficult it was to produce all the evidence required. At length, the Statute of Limitations was called in to aid such titles.

At first the sales were made by the commissioners; and, strange as it may seem, their deeds were executed by two or more of them as a corporate act, and one seal was affixed, though they had no common seal. These sales were soon determined to give no title; and the sales and the deeds too, in common parlance, were spoken of as void. Yet in *M'Coy* v. *Trustees of Dickinson College*, a deed of this kind was admitted in evidence, as showing that the purchaser held under colour of title, that he claimed under his deed, and of course adversely to all others, and as designating the extent of his claim. In *Read* v. *Goodyear*, (17 *Serg. & Rawle* 350) the land was sold in 1803; the purchaser had paid the taxes from that time to the trial, more than twenty-one years; the former owner had never paid or offered to pay any taxes. The purchaser, and those claiming under him, held the land, though no proof of the regularity of the proceedings to sell could be given. I refer to that case as showing the state of things at, and previous to that decision, and the grounds on which it was held that the negligence of the owner was held to be sufficient to justify a jury in finding that the former owner had abandoned his claim and the land.

In *Royer* v. *Benlow* (10 *Serg. & Rawle* 306) Chief Justice Tilghman had said, neglect to look after land, or pay taxes for more than twenty-one years, would justify a jury in presuming an abandonment. In *Foster* v. *M'Divit* (9 *Watts* 344), it is said an exact compliance with all the requisites prescribed by the laws, is only necessary as between the former owner and the purchaser. An actual possession, or such constructive possession as a purchaser at a tax sale has, is all that is required against one who enters without right. All that is required of a plaintiff in ejectment, in the first instance, after showing such title as he purchased to have been granted by the commonwealth, is to prove that the land was sold for taxes assessed, and exhibit his deed as against an intruder. This is such a *primâ facie* title, as to put the defendant to the necessity of showing a better right. A trea-

I. — 64　　　　2 s

[Foust v. Ross.]

surer's deed, and subsequent payment of taxes, is sufficient to recover against one who enters without title. If this case, which had but lately been published, had been seen at the trial below, we may suppose this cause would not have been brought to this court.

The present case comes before us on bills of exceptions to testimony, and on exception to the charge of the court on the effect of that testimony. Some of the evidence offered by the plaintiff would at first view appear irrelevant; or, at least, such as would only have been proper as rebutting evidence. The case, however, is in some respects under peculiar circumstances. A defendant in ejectment may show an outstanding title in a third person; but it must be a valid subsisting title; not one abandoned, derelict, or barred by the Statute of Limitations. The plaintiff first showed a warrant, 30th of August 1792, to Mary Custard, and a survey and return on it for $401\frac{2}{10}$ acres. Now, this showed title to have been at one time in Mary Custard, or whoever owned that warrant; and the plaintiff must show a better title, or a transfer of that title to himself, or it would be an outstanding title against him. He was proceeding to show a transfer of that title by a sale for taxes; that sale was before the Act of 1815. He must then show a strict compliance with every requisite prescribed by every Act for the sale of unseated land; or, according to the cases above cited, show what would amount to an abandonment of the title of Mary Custard by its owner; as the above cases show, that not looking after the land, or paying taxes for twenty-one years, may be sufficient evidence of this: but upwards of thirty years makes a lapse of time which, though perhaps not stronger in law, yet is as good in law, and strikes the mind as more conclusive. The plaintiff relied on a deed from the sheriff of Luzerne county, dated in 1809, and the payment of taxes since. It was not necessary to go further back, but if he could show that Mary Custard had been taxed from 1805, by the assessments in the commissioners' office, had never paid those taxes, and the land had been directed to be sold before 1809, had been publicly advertised in the "Luzerne Federalist," "Democratic Press," and "United States Gazette," in 1809; though all the newspapers could not be produced, showing a continuance regularly for the prescribed time in each of these papers, it was not error to admit all this evidence; it had a bearing to prove a total dereliction or abandonment by the former owner, which, in this case, was as essential to the plaintiff, as to show a sale, not in all respects regular, to himself.

The warrant to sell for unpaid taxes, signed by the three commissioners, was objected to, but no reason is stated except that it was directed to the sheriff of Luzerne county, and not to Jacob Hart, sheriff of Luzerne. Now this was no objection. The sale-book, as it is called, of Jacob Hart (that is, a book in which he entered the tracts sold, and the purchasers, and the price) was

[Foust v. Ross.]

offered. In this case it was not necessary, because the deed was in the hand of the counsel to be given in evidence next. But perhaps the two were offered together; the book might have been omitted; it was not an error for which to reverse. If this book had been offered to supply the place of a lost deed, it might, without other evidence, have been a question of more difficulty; if offered, as in a late case, to prove that tax had been assessed and was due, it would not alone have proved it.

The admission of the deed by the sheriff for the tract in question was then offered and objected to. There was on it a certificate of the prothonotary and seal of court, that it had been acknowledged in open court. The commission and oath of office of the sheriff had been given in evidence; *these were unnecessary;* there was no error in admitting the deed.

Plaintiff then showed the payment of taxes since by himself, as per receipts, until this suit brought.

Plaintiff then offered a paper, dated 3d of July 1816, found on file in commissioners' office, according to the Act of 1806, stating that this tract was owned by the plaintiff, William Ross. There was no mark showing when filed in the office. Alone, it would have been an immaterial paper — would not have been any evidence of title—but, being directed by Act of Assembly, and as connected with other evidence in this cause, there was no error in receiving it.

By the 3d section of the Act of 3d of April 1804, no action shall be brought for the recovery of lands sold for taxes, unless the same be brought within five years after such sale. The court held this only applied to cases where the purchaser entered into possession; so that a writ might be served on him. The Act of 29th of March 1824, prescribed a mode of giving notice to the purchaser, when he did not live on the lands or in the county, and gave former owners two years from that time, within which to commence suits. Now, although both these provisions were for the benefit of the former owner, and to protect the purchaser, if no suit was brought against him within the prescribed period, yet it is impossible not to see their bearing on a case like this. If the owner, Mary Custard, has lost all right by law, and the title of the purchaser is indefeasible against such owner, it is not easy to see why such purchaser, who has taken possession, or paid taxes, has not a good title against an intruder.

The defendant showed no title; and the court told the jury, that on the evidence the plaintiff was entitled to recover. This is here objected to, as taking the facts from the jury. When there is evidence, especially parol evidence, on both sides, generally the facts must be left to the jury; but when the defendant gives no evidence, and shows no right, but objects to the title of a plaintiff in ejectment, it very much resembles a demurrer to evidence, the decision of which is always with the court. In this case the

question was, whether by law, taking into view the length of time beyond twenty-one years, the plaintiff had shown a title which gave a good right of entry against one who had no right, but was recently in possession without right; and in such a case it was not only the right, but the duty of the court, taking into consideration the Acts of Assembly, and the settled construction of them, to say, as was said here, that the plaintiff was entitled to recover.

But in this court an objection was taken, which was not mentioned at the trial, and not assigned for error. This might be a sufficient cause for not noticing it here; but it is thought best to remark on it. The deed from the sheriff to Ross was in due form, and on it was a certificate under the seal of the court, and official signature of the prothonotary, that the deed had been duly acknowledged in open court. But it was objected that the docket was not exhibited to show that the acknowledgment was duly entered on it; and in support of the objection the plaintiff in error cited *Bellas* v. *M'Carty*, (10 *Watts* 21); *Patterson* v. *Stewart*, (10 *Watts* 470). In neither of these cases was the deed produced with the certificate of the acknowledgment, under seal of the court, endorsed on it; and in both these cases it was shown or admitted that no entry of the acknowledgment had ever been made on the docket. It has not been decided that an entry under seal and signature of the acknowledgment, is not in any case *primâ facie* evidence. The cases cited only show that a majority of the court decided that this may be rebutted, by showing that such acknowledgment was not and never had been on the docket. If in this case the deed as offered was evidence, and nothing was shown to contradict the official certificate, that certificate must be taken to be true.

Judgment affirmed.