## Hoffman *et al.* versus Bell.

1. Land was sold for taxes to the commissioners; the treasurer making the sale executed the deed after his term of office. *Held*, that the deed was void.

2. In ejectment by one claiming under this sale, the deed was not such primâ facie title as imposed upon the defendants the obligation of showing title.

3. The deed of the treasurer was as if no deed at all had been executed.

4. Under the Act of March 13th 1815 (Unseated Lands), a deed from the treasurer for land sold for taxes to the commissioners is essential.

5. The curative clause of the Act of 1815 has no application to a sale where no deed is made.

6. The provisions of the act must be followed unless as it admits of relaxation by its own words.

7. Land warranted and surveyed in 1794 was sold to the county for taxes in 1820; the treasurer made a deed in 1826, after he had gone out of office, the purchaser from the county paid taxes up to 1866, and the warrantee neither made claim nor paid taxes. *Held*, that this would not give title to the purchaser without possession actual or constructive.

8. Payment of taxes on unseated land by a stranger for twenty-one years raises no presumption that the owner has conveyed to him.

9. The owner's non-payment of taxes is not an abandonment.

10. The doctrine of abandonment applies only to imperfect titles held by warrant and survey, not to land held by perfect title.

11. A warrant and survey returned and accepted and purchase-money paid confers a perfect title except against the Commonwealth, which has the legal title as security of the fees for patent, to which the owner is entitled on their payment.

12. The patentee is trustee for the true owner.

March 25th 1869. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Elk county* : No. 335, to January Term 1869.

In the court below Charles Bell, on the 5th of December 1866, brought an action of ejectment against Henry Hoffman and twelve others for 550 acres of land in Benzinger township, part of warrant 4883.

[Hoffman v. Bell.]

The case came on for trial on the 15th of January 1869, before Williams, Additional Law Judge.

The plaintiff gave in evidence warrant No. 4883 of February 3d 1794 to W. Willink and others for 900 acres; survey July 8th to Willink and others, under this warrant for 1023 acres; assessment for year 1818 in Shippen township, McKean county, on warrant 4883; assessment for road and county taxes on same tract for 1819 in the name of Willink and others; deed May 1st 1826 from John Taggart, treasurer of McKean county, to the commissioners of the county for a number of tracts of unseated land, including 4883. The deed recited that a number of tracts of land containing 24,225 acres had been assessed with county and road taxes amounting to $206.09, designating the tracts and tax assessed on them respectively, one of them being 4883; the sale of all the tracts to the commissioners for the use of the county on the 9th of November 1820 for $296.62. The deed was acknowledged in open Court of Common Pleas May 2d 1826. Taggart's term of office as treasurer had expired at the date of the deed. The plaintiff further gave evidence from the treasurer's record of sale of unseated lands; sale of warrant 4883 in 1820 to commissioners; also deed January 5th 1829 from the commissioners to John King for warrant 4883, acknowledged in open court and reciting sale by Taggart to the commissioners on the 1st of May 1826; deed of May 29th 1829 from King to William Bell for west half of 4883, reciting conveyance from commissioners to King; deed March 23d 1852, W. Bell to plaintiff for west half of 4883 containing 511½ acres, "claimed by deed from John King," &c.; also evidence of payment of taxes by W. Bell and N. C. Gallup in 1826 and 1828, by W. Bell in 1829; by W. Bell and plaintiff from 1830 to 1866 inclusive.

The defendants gave in evidence warrant of February 3d and survey of July 9th 1794 and patent September 24th 1799 to W. Willink for No. 4886 for 1023 acres. Sale of 4886, June 11th 1844, for taxes of 1842 and 1843 to T. J. Stryker; and deed for same September 24th; deed August 16th 1850, Stryker to M. Benzinger and J. Eschbach for 4886 and other tracts; also deeds from Benzinger and Eschbach for various lots described as in St. Mary's settlement, the title to these lots by sundry conveyances being in the defendants; they also gave evidence for the purpose of showing adverse possession and improvements by the defendants and their predecessors of these lots for more than twenty-one years. They also gave evidence that these lots, of which possession was taken as in warrant No. 4886, were in fact part of warrant No. 4883, and that Benzinger and Eschbach's grantees had settled upon them by mistake.

The defendants submitted the following points:—

[Hoffman *v.* Bell.]

1. The plaintiff must recover, if at all, on the strength of his own title and not on the weakness of that of the defendants.

2. If the land was surveyed off into lots by Benzinger and Eschbach before the entry by any of the defendants and they purchased under the belief and with the expectation that they were acquiring the title, and if under that belief they have improved the larger portions of their purchases, erected buildings, and continued in the undisturbed possession thereof, without notice to plaintiff's claim, till about the time this suit was commenced, they are not intruders and bound to show a better title than the plaintiff in order to defeat his recovery.

3. Under the evidence given by the defendants, they are entitled to a verdict, unless the plaintiff shows a perfect legal title to the premises.

4. The treasurer's deed to the commissioners of McKean county not showing that the lots contained therein were separately sold and separately conveyed, is not evidence of such a sale as will pass the title to the lot in controversy to the commissioners.

5. The deed from the treasurer to the commissioners having been made, dated, acknowledged and delivered by the treasurer who made the sale, more than two years after the expiration of his term of office, is void and did not vest the title in the commissioners, and the defendants are in a position to raise the objection to the deed.

6. The deed from the commissioners to John King does not vest in him the title they hold, if any, not having been acknowledged by them before a justice of the peace, as required by the 2d section of Act 29th March 1824.

7. The presumption of a conveyance from the warrantee to William Bell, which perhaps might arise from the payment of taxes by him for more than twenty-one consecutive years, is rebutted by the fact that the plaintiff claims through the treasurer's deed to the commissioners, and the commissioners' deed to John King, and that presumption has no application to other than unimproved lands in which no person is in the actual possession.

8. The payment of taxes by William and Charles Bell, after the defendants came into the possession of the premises, creates no presumption, as against them, either of abandonment by the person holding the adverse title, or of constructive possession by the said William and Charles Bell.

9. There can be no recovery for such portions of the premises as were taken possession of by the defendants or those under whom they claim, and lines marked designating the extent of their respective claims, and that possession and occupancy continued undisputed and in hostility to the plaintiff for more than twenty-one years before the commencement of this suit.

The court charged :—

[Hoffman *v.* Bell.]

" The plaintiff has shown title to warrant No. 4883 out of the Commonwealth, an assessment of taxes upon it, an irregular sale and deed by the treasurer to the commissioners of McKean county in 1820, and a sale and deed by the commissioners to the plaintiff's grantor in 1829, together with the payment of taxes upon this lot by the plaintiff and those under whom he claims from 1829 down to the commencement of this suit in December 1866. [The treasurer's deed to the county commissioners was made after the expiration of his term of office, and if a recent deed, we should hold it insufficient to pass the title of the warrant, but after the lapse of forty-six years without claim or payment of taxes by the warrantee, abandonment will be presumed. The same may be said of the commissioners' deed.] The county commissioners sold this lot in 1829, and made a deed irregularly acknowledged; but they have since taxed the land in the hands of their vendee, and for thirty-seven years they have acquiesced in that sale, neither making claim or paying taxes during all that time. This makes at least as to all persons not claiming under the warrantee or the county of McKean, a primâ facie title in the plaintiff. The defendants are therefore put upon their title. They claim under sundry conveyances to them from Benzinger and Eschbach, who sold the lots occupied by the defendants, respectively to them as upon warrant No. 4886.

" The title to No. 4886 is traced to Benzinger and Eschbach, and it is shown that the defendants were put upon the lots occupied by them as upon 4886. The first question raised, therefore, is that of location. Upon which of these two warrants are the defendants' lots located? The testimony of Hiram Payne puts them upon 4886, but that of J. L. Brown and George Walmsley and others puts them upon 4883, and upon that part of it claimed by plaintiff. The evidence is strongly against the location sought to be established by Payne, but we submit it to you, saying that our view of it does not bind you, but that to the court it appears that the balance of the testimony is strongly in favor of the location which fixes the defendants upon 4883. * *

The court, after stating the law and referring to the facts as to the Statute of Limitations, proceeded:—

" We have refused to take this case from the jury as asked by defendants, but instruct you in answer to the points submitted by them as follows :—

" 1. We affirm this point.

" The plaintiff must recover on the strength of his own title, but a primâ facie showing of title is *strong enough* as against a trespasser or intruder.

" 2. We refuse to charge as requested in this point.

" It is not a question of bona fides nor of intention, but one of title. The defendants showing no claim or pretence of claim under

the title set up by plaintiff, they are strangers to it; and as they did not enter under it, their entry was a trespass and an intrusion into the land held by him under it.

"3. We refuse to charge as requested in this point. We have already said that a showing of title primâ facie by the plaintiff put the defendants upon the showing of the title under which they claim. The question is, then, which is the better title to the land.

"4. We refuse to charge as requested in this point.

"Defendants do not claim under the warrantee; and even if they did so claim, the long-continued payment of taxes by the purchaser at tax sale, and the absence of payment by the warrantee, might, and we think would, give the plaintiff title even as against the warrantee. As their title, however, is wholly independent from that of the warrantee of 4883, we think the defendants cannot object that the warrantee's title was never divested by the tax sale, especially after near half a century's acquiescence by the warrantee himself.

"5. We decline to charge as requested in this point. In the case of a recent deed the rule might be as stated, but upon the facts of this case we refuse the instructions asked.

"6 and 8. We decline to charge as requested in these points.

"7. As applicable to the facts of this case, we cannot affirm this point. The possession of an intruder, one who enters without right, cannot prevent the application of the presumption of a conveyance by the warrantee.

"Such payment of taxes creates a presumption as against the warrantee which clothes Bell with warrantee's title. If against the warrantee, then by clothing Bell with the warrantee's right to recover against the defendants, it must be equally operative against them.

"9. We affirm this point.

["From these instructions it follows that if you believe the defendants are upon 4883, the plaintiff is entitled to your verdict for all the land described in his writ except so much as may have been occupied for a period of twenty-one years by one or more of the defendants."]

The verdict, January 16th 1869, was for the plaintiff for the land described in writ, except three lots designated in the verdict.

The defendants removed the case to the Supreme Court.

They assigned for error the answers of the court to their points from 2 to 8 inclusive, and the parts of the charge enclosed in brackets.

*J. G. Hall* and *R. Brown*, for plaintiffs in error.—The sale of a number of tracts for a gross sum is void: Woodburn *v.* Wireman, 3 Casey 18; Morton *v.* Harris, 9 Watts 318. Taggart's

[Hoffman v. Bell.]

deed as treasurer after his time had expired was invalid: Donnel
v. Bellas, 10 Casey 159; Act of March 18th 1815, § 2, 6 Sm.
L. 300, Purd. 993, pl. 24. So of the deed from the commission-
ers to King being acknowledged defectively: Act of March 29th
1824, § 2, 8 Sm. L. 290, Purd. 999, pl. 55. Payment of taxes
and claiming the land will not oust the owner: Hole v. Ritten-
house, 1 Casey 493. The defendants were not intruders, they
occupied under color of title and bonâ fide claim: McCall v.
Neily, 3 Watts 72; Green v. Kelloum, 11 Harris 254; and could
take advantage of the defects of plaintiff's title: Shearer v. Wood-
burn, 10 Barr 511; Hole v. Rittenhouse, 7 Harris 310. A want-
ing link in title may be supplied by a long-continued claim with
acts of ownership uncontested by the apparent owner: Hastings
v. Wagner, 7 W. & S. 215.

*B. D. Hamlin* and *H. Souther*, for defendant in error.—The
assessment of taxes, sale and deed from the treasurer passed the
title: Frick v. Sterritt, 4 W. & S. 269; Russell v. Werntz, 12
Harris 337. Taggart had authority to make the deed: Kennedy
v. Daily, 6 Watts 269; Brewer v. Fleming, 1 P. F. Smith 102.
The deed of the commissioners was sufficient: Act of 1824, *supra;*
McCoy v. Michew, 7 W. & S. 389; Jordan v. Stewart, 11 Harris
247; 1 Greenlf. Ev., §§ 21, 570. The defendants were intruders,
and could not set up irregularity in plaintiff's title: Foust v. Ross,
1 W. & S. 501; Dikeman v. Parrish, 6 Barr 210; Foster v. Mc-
Divitt, 9 Watts 341; Crum v. Burke, 1 Casey 381; Troutman
v. May, 9 Id. 455; Wheeler v. Winn, 3 P. F. Smith 131. The
original owner, or the defendants, if they held his title, could not
now defeat this tax sale. His title was by warrant and survey;
no patent appears to have issued. After this lapse of time, now
fifty years, by the non-payment of taxes and non-claim upon the
land, the law will presume ouster and abandonment by the holder
of the title under the warrant and survey: Reed v. Goodyear, 17
S. & R. 350; Naglee v. Albright, 4 Whart. 300; Foster v. Mc-
Divitt, Foust v. Ross, *supra;* Taylor v. Dougherty, 1 W. & S.
327; Kelsey v. Murry, 9 Watts 111.

The opinion of the court was delivered, May 11th 1869, by

SHARSWOOD, J.—There is one question presented upon this re-
cord, the determination of which, according to the view we take of
it, dispenses with the examination in detail of the errors assigned.
Did the plaintiff below give in evidence such a primâ facie title as
was sufficient to put the defendant upon proof of a better one? It
must be admitted that if he did, the defendants failed, according
to the verdict of the jury, to show any right to the possession.
With a perfectly good title, as it would seem, to a tract numbered
4886, they had by mistake settled upon and improved another

11 P. F. SMITH—29

[Hoffman *v.* Bell.]

tract, No. 4883, which was that for part of which this ejectment was brought.

The plaintiff claimed as the purchaser under sale for taxes. He showed the title to be out of the Commonwealth by a warrant to Wilhelm Willink *et al.*, dated February 3d 1784, a survey made thereon July 8th 1784, and returned into the land office September 16th 1784. He then gave evidence of an assessment of taxes on this tract, No. 4883, as unseated for the years 1818 and 1819, a deed of John Taggart, late treasurer of McKean county, to the commissioners of that county, dated May 1st 1826, reciting a sale made November 9th 1820, followed by a deed from the commissioners to John King, dated January 5th 1829. The title to the western half of the tract was then deduced from John King to the plaintiff, and payment of taxes by plaintiff was proved from 1830 to 1866 inclusive. The defendants had been assessed and paid taxes on No. 4886, as seated, supposing it to be their tract which they had settled upon and improved from 1845 to 1846, when they went into possession.

The fatal defect in the plaintiff's title, and which deprives it even of such prima facies as would impose upon the defendants the obligation of showing some color of title in themselves, is, that the deed of John Taggart, who styles himself late treasurer of McKean county, was executed by him after the expiration of his term of office. It was a mere nullity, as much so as if it had been executed by a stranger who never held the office: Donnel *v.* Bellas, 10 Barr 341; 1 Jones 341; s. c., 10 Casey 157. "What power had Coleman (a late treasurer)," says Woodward, J., "to perform an official act on the 5th of January 1848? He was *functus officio* on that day as much as he was a month or a year thereafter. He could no more sell and convey than a dead man. And the county whose agent he had been, and who knew better than all the world beside that he had been superseded by another officer, could take nothing by a purchase from him. His act was simply null and void:" Cuttle *v.* Brockway, 8 Casey 49. It is not irregularity only; it is as though no deed whatever had been executed. The only question then is, whether the plaintiff, claiming under a tax sale, has a primâ facie title as against a stranger without producing a treasurer's deed, or showing that such a deed was executed and delivered.

I have looked very carefully through all the cases to find one in which there was no deed, but without success. In Kennedy *v.* Daily, 6 Watts 269, there was a deed duly executed by the treasurer while in office, but not acknowledged until after his term had expired. This was sustained on the practice, to disturb which would unsettle, as it was said, many estates. But besides that, the acknowledgment is no part of the deed. It is merely the appointed mode of authenticating it. In Hazzard *v.* Trego,

[Hoffman v. Bell.]

11 Casey 9, the court below instructed the jury that the deed was but evidence of the consummation of a tax sale, but that if it was lost or surrendered, secondary evidence would be admissible. This was assigned for error and affirmed in this court. See also Halsey v. Blood, 5 Casey 319; Reinboth v. The Zerbe Run Improvement Co., Id. 139. In Liggett v. Long, 7 Harris 499, a deed under seal and duly acknowledged in open court, with the treasurer's receipt, but not signed by him in the proper place, was rejected by the court below as evidence of title in the defendant, but admitted as evidence of a sale, so as to give the defendant a right to compensation for improvements. The plaintiff only sued out a writ of error, and complained of this admission, but the judgment was affirmed. "Where the treasurer," says Lewis, J., "has omitted to place his signature to a deed at the proper place for it, near the printed impression of a seal, but has attached it to the receipt for taxes and costs, and bond for the surplus pur chase-money, and has acknowledged the deed in open court, and such acknowledgment is duly certified on the deed, and entered on the records of the court, the omission of the signature is not such a defect as will deprive the purchaser of compensation for improvements made on the faith of such title." This is not indeed a decision on the point, but as evidence of professional and judicial opinion as to the necessity of a deed, has weight. It was not remarked in the case that the act does not provide that the deed shall be signed, and at common law, irrespective of statute, signature is not essential to a deed: 2 Bl. Com. 305; Wright v. Wakeford, 17 Ves. 459. "A purchaser of unseated lands at treasurer's sale," says Woodward, J., "acquires no rights until he obtains his deed:" Gault's Appeal, 9 Casey 99. It would undoubtedly have been entirely competent for the legislature to have declared that where unseated land is bid off by the commissioners at a treasurer's sale, the title of the owner shall be ipso facto divested, and the land become the property of the county. But they have not seen proper to do so, and very wisely. They have expressly prescribed that there shall be a deed. "A deed shall therefore be made by the treasurer to the commissioners for the time being, and to their successors in office, to and for the use of the proper county:" Act of March 13th 1815, Pamph. L. 179. When the owner redeems within the five years allowed for this purpose, "the commissioners shall by deed-poll endorsed on the back of the treasurer's deed to them, convey to the person who shall have been the owner of the land at the time of the sale, or his legal representatives, all the right and title which the county may have acquired under such sale as aforesaid:" Section 6. By the 9th section it is provided, "that the form of the deed required by this act to be executed by the treasurer to the commissioners may be in the following words." The curative clause of this

[Hoffman *v.* Bell.]

celebrated law which worked so marked a revolution in our tax titles, that from being the worst they became the best, has clearly here no application. It is, "that no alleged irregularity in the assessment, or in the process or otherwise, shall be construed or taken to affect the title of the purchaser, but the same shall be declared to be good and legal." It was considered in Huston *v.* Foster, 1 Watts 478, to be unquestionable, that this provision only applied to treasurers', not to commissioners' sales; but it was held that the title being duly vested by the treasurer's deed in the county, which holds like any other purchaser purged of irregularities: Peters *v.* Heasley, 10 Watts 208; the principle which requires that the directions of a power vested in any man or body of men over another's freehold shall be strictly pursued, did not apply; and the commissioners' sales needed not the healing clause of the statute to cure mere irregularities. It is clear, however, that the provisions of the law must be followed, unless so far as it admits of relaxation by its own words. The legislature evidently did not mean that this important transaction should depend upon oral testimony, or even the loose memoranda and books of the commissioners' office, the imperfection and inaccuracy of which had been the cause of so many difficulties under the old Act of April 3d 1806, 4 Smith 201. They *required*, therefore—that is their own language—that it should be evidenced by a deed. If a party can recover possession on a commissioners' deed, without any treasurer's deed to them preceding it, the same rule must be applied to any other purchaser at a treasurer's sale. By the 3d section of the Act of 1815 it is expressly declared that before the county shall institute an action against a bidder for the purchase-money, a deed shall have been tendered to him. Without such a tender he can resist the payment. It would be contrary to the whole spirit and policy of our legislation to hold that a bidder at a tax sale, to whom the land is knocked down, has any title without a treasurer's deed. The Act of 1815 is the Statute of Frauds and Perjuries as to this particular kind of transfer of real estate, but instead of a mere note or memorandum in writing, it requires a deed. It would be fraught with all the perils which that statute was intended to provide against to hold otherwise. It is not necessary to consider the case of a purchaser who has gone into possession and made improvements on the faith of his parol contract. That he would have a right to compensation for such improvements seems deducible from the case of Legget *v.* Long, before referred to.

The learned judge in the court below appears to admit all this, for he said, as to the paper offered as a deed, "if a recent deed, we should hold it insufficient to pass the title of the warrantee." He added, however, "but after the lapse of forty-eight years without claim or payment of taxes by the warrantee, abandonment will be presumed."

[Hoffman v. Bell.]

But how does that help the plaintiff's case? The non-claim and non-payment of taxes by the owner cannot give a title to a mere stranger, having no possession, actual or constructive. It may avail in some cases, in answer to the defence of an outstanding title in him: Hunter v. Cochran, 3 Barr 105. If the want of a treasurer's deed could be regarded as a mere irregularity, there would have been no occasion to resort to a presumption of abandonment. Even as to tax titles prior to 1815, a purchaser of lands sold for taxes has such a constructive possession as will entitle him to recover in ejectment against a naked intruder or trespasser, no matter how gross may have been the irregularities in the sale: Foster v. McDivit, 9 Watts 344; Foust v. Ross, 1 W. & S. 501; Dikeman v. Parrish, 6 Barr 210; Crum v. Burke, 1 Casey 381. "When an assessment of taxes is shown," says Chief Justice Woodward, "and a treasurer's sale made for their collection, the deed is conclusive against an intruder without title or color of title;" Wheeler v. Winn, 3 P. F. Smith 131. Since the Act of 1815, by force of its healing provisions, it does not lie in the mouth of the warrantee and those claiming under him to object to any mere irregularites in the proceedings. But the land must be subject to be sold for taxes, and there must be an actual consummated sale. The only competent evidence of this, as we have seen, is a treasurer's deed, whether direct to the purchaser or through the medium of the commissioners. It certainly never was meant to decide that any deed purporting to be a treasurer's deed would invest the grantee with constructive possession, so as to entitle him to recover from a stranger. Not producing the only competent evidence of a consummated tax sale, the plaintiff was not such a purchaser; he had no title whatever; and nothing can be plainer than that non-claim and non-payment of taxes by the warrantee cannot avail him. But it is contended, that the payment of taxes by the plaintiff from 1830 to 1866 raised a presumption in law that the title of the warrantee had been conveyed to him, or, as is expressed in the answer of the court to the defendant's 8th point, "such payment of taxes creates a presumption as against the warrantee, which clothes Bell (the plaintiff) with the warrantee's title." It would be a new and rather startling doctrine, to announce that a stranger without any title, by paying taxes for twenty-one years on a vacant lot or tract of unseated land, thereby enjoys the benefit of a presumption in law that the owner has conveyed it to him. It is not improbable, that the case of Taylor v. Dougherty, 1 W. & S. 327, was in the mind of the court in giving this instruction. There the plaintiff showed a warrant and survey in the name of Henry Kepple, and a patent to Robert McClay, and in answer to a settlement set up by the defendant prior to the patent but subsequent to the survey, it was proved that the land was returned for taxation by Samuel

[*Hoffman v. Bell.*]

McClay, the ancestor of the patentee, long before its date, and that taxes continued to be paid by those claiming under him for more than thirty years; it was held, that this was primâ facie evidence that Samuel McClay was the owner of the warrant; the presumption was held to arise more readily from the well-known fact that in the days of the proprietary officers, as was said in Coxe *v.* Grant, 1 Yeates 166, the person whose name was used in a warrant or location, stood as a trustee for him who took out the title and paid the expense of the survey. The plaintiff's own evidence in this case conclusively rebutted any presumption that the warrantees were trustees for John King, under whom he claimed. The land was put up to be sold for taxes; it was bid off by the commissioners, and nine years afterwards sold by them to King. No evidence was given of any claim, or payment of taxes by him prior to this time. Now, can it be pretended, that there was any presumption, either of fact or law, that he was the owner of the Willink warrant? "It would be of mischievous consequence," says Sergeant, J., in Naglee *v.* Albright, 4 Whart. 300, " to hold that a person having no title to a vacant lot, could, by merely undertaking to pay the taxes, or some of them, though even assessed in his name, put himself in the position of an actual possessor in hostility to the real owner, and thus divest the title of the latter by force of the Statute of Limitations, without any visible possession or act amounting in law to an ouster. The owner's non-payment of taxes cannot be considered as an abandonment of his title. The doctrine of abandonment does not apply to lands held by a perfect title, but only to imperfect titles, by warrant and survey. There are imperfect titles by warrant and survey, abandonment of which may be presumed in favor of a junior warrant or settlement right, or a purchaser of an irregular tax title:" Chambers *v.* Mifflin, 1 Penna. R. 74; Addleman *v.* Masterson, Id. 454; Star *v.* Bradford, 2 Id. 384; Read *v.* Goodyear, 17 S. & R. 350; Zerbe *v.* Schall, 4 Watts 138; Foust *v.* Ross, 1 W. & S. 506. But a warrant and survey, returned and accepted, on which the purchase-money has been paid, confers a perfect title against all the world but the Commonwealth, which has itself the legal title only as security for the patenting fees. On payment of them, the owner has a right to a patent, which, however, as to all third persons, gives him no better title than he had before. The patentee, like the Commonwealth, is but a trustee for the true owner: Bunting *v.* Young, 5 W. & S. 188. "Paying taxes merely for land," says Kennedy, J., " without more, by a stranger, can neither amount to an ouster or divest the owner of his title to it. And as to the abandonment, this can never be presumed from lapse of time, where the plaintiff and those from whom he derives his title, claimed and held the land under warrant and survey, upon which the whole of the purchase-money had been paid to the Common-

[Hoffman *v.* Bell.]

wealth. Nothing short of an actual ouster of the owner from the land in such case, by taking possession of it, and continuing to keep the same, by exercising acts of ownership, at least, upon it for twenty-one years or upwards, will defeat the owner of his right to the land:" Urket *v.* Coryell, 5 W. & S. 83; see also Sorber *v.* Willing, 10 Watts 142; Hole *v.* Rittenhouse, 1 Casey 493. The owner's right may also be defeated by a treasurer's sale for taxes, as unseated land, consummated and evidenced by a deed. If there is no such deed, no payment of taxes by the alleged purchaser can strengthen his title, for he has none to be strengthened.

                                        Judgment reversed.