# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donald L. Bussard, Barbara J. :
Bussard, Edward F. Lynch and :
Carol L. Lynch, :
     Petitioners :
          :
    v.     :
          :
Pennsylvania Department of :
Conservation and Natural Resources :
(State Board of Property), : No. 516 C.D. 2021
     Respondent : Argued: May 16, 2022


BEFORE: HONORABLE CHRISTINE FIZZANO CANNON, Judge
     HONORABLE ELLEN CEISLER, Judge
     HONORABLE STACY WALLACE, Judge


OPINION
BY JUDGE FIZZANO CANNON   FILED: June 10, 2022


    Petitioners, Donald L. Bussard, Barbara J. Bussard, Edward F. Lynch, and Carol L. Lynch (collectively, Bussards), seek review of an order of the State Board of Property (Board), which sustained the preliminary objections of the Pennsylvania Department of Conservation and Natural Resources (Department) to the Bussards' Amended Petition Seeking Confirmation of Ownership of Real Property (Amended Petition) and dismissed the Amended Petition with prejudice. We vacate the Board's order and remand this matter for further proceedings.

## I. Background

At issue in this matter is the title to a tract of land consisting of 103.04 acres in Southampton Township, Bedford County (Property). Reproduced Record (RR) at 130a. The Bussards and the Department rely on competing chains of title to the Property. Thus, the Bussards contend they are record owners of the Property, and the Department counters that the Commonwealth owns the Property.

## A. Commonwealth Chain of Title

Title to the Property originated in a warrant[1] issued by the Commonwealth to Jesse Dicken in 1863 (Dicken Warrant) for a tract of land that purportedly included the Property. RR at 150a-51a. In 1864, Jesse Dicken and Rebecca Dicken sold land granted under the Dicken Warrant, including the Property, to Robert Ash. *Id.* at 135a & 201a-02a. In 1896, Abram and Marian V. Ash sold land including the Property to Hilary H. Hartsock. *Id.* at 135a & 204a-05a. However, as no deed from Robert Ash to Abram and Marian Ash was found, in 1911, Robert Ash and Ann B. Ash, who were located in Nebraska, executed a quitclaim deed to Hilary H. Hartsock. *Id.* at 135a-36a, 207a & 209a-10a. Also in 1911, Hilary Hartsock and Ida G. Hartsock conveyed almost all of the land subject to the Dicken Warrant, including the Property, to the Commonwealth of Pennsylvania. *Id.* at 134a & 197a-99a.

The foregoing facts are largely undisputed. However, the Bussards argue that a 1937 patent issued to McKinley Morris (Morris Patent) perfected title

_____

[1] As will be discussed further below, original land grants through warrants conveyed equitable ownership, subject to payment of the purchase price to the Commonwealth and subsequent perfection of legal title by issuance of a patent. *See Hoffman v. Bell*, 61 Pa. 444, 454 (1869).

to the Property in McKinley Morris. RR at 137a-38a. In the alternative, the Bussards assert that even if the Morris Patent did not transfer title to the land subject to the Dicken Warrant, the present Property includes only 39.4 acres from the Dicken Warrant, limiting the Commonwealth's claim of title to that portion of the Property.[2]

## B. Bussard Chain of Title

The Bussards' chain of title, as pleaded in the Amended Petition, begins with a 1923 deed from Rhoda May Strut and Robert S. Strut to McKinley Morris and Nellie P. Morris. RR at 131a. After purchasing, by that deed, land including the Property, McKinley Morris, evidently recognizing the existence of the Dicken Warrant, sought to perfect his title to the purchased land by obtaining a patent from the Commonwealth for the land in the Dicken Warrant. *See id.* at 132a. In 1937, McKinley Morris succeeded in obtaining the Morris Patent from the Pennsylvania Department of Internal Affairs. *Id.* at 132a, 150a & 153a-60a. In 1951, McKinley Morris and Nellie P. Morris conveyed land including the Property to Earl Ketterman. *Id.* at 131a. In 1984, Earl Ketterman conveyed the same land to Earl Ketterman and Frances L. Ketterman. *Id.* at 131a-32a. In 2010, Frances L. Ketterman, widow of Earl Ketterman, conveyed land including the Property to the Bussards. *Id.* at 130a-31a & 141a-47a.

---

[2] In their response to the Department's preliminary objections, the Bussards also questioned the identity and ownership of the Robert Ash who executed the quitclaim deed in 1911, as well as the authenticity of the correspondence pertaining to the quitclaim deed and purporting to document Robert Ash's identity. *See* RR at 135a-37a, 202a, 212a & 214a. Further, in the Amended Petition, the Bussards asserted that the Board acted improperly by making findings of fact without holding an evidentiary hearing. Am. Pet. for Rev. at 3. However, the Bussards neither assert nor develop these additional issues in their brief on review before this Court. Accordingly, these issues are waived. *See Blue Pilot Energy, LLC v. Pa. Pub. Util. Comm'n*, 241 A.3d 1254, 1271 (Pa. Cmwlth. 2020) (citing Pa. R.A.P. 2119(a); then *In re Condemnation ex rel. Pa. Dep't of Transp.*, 76 A.3d 101, 106 n.8 (Pa. Cmwlth. 2013) (party waives an issue not developed in its brief)).

The foregoing facts are also largely undisputed. However, the Department demurs to the Amended Petition, arguing that the Bussards have failed to state a viable claim because they cannot trace their chain of title back to the Dicken Warrant. RR at 225a. Further, the Department challenges the legal effect of the Morris Patent; the Commonwealth, having ostensibly obtained title to the Property from Hilary H. Hartsock in 1911, argues that the Morris Patent was ineffective to divest its ownership of the Property. *Id.* at 225a-27a.

## C. Procedural History

In 2018, the Bussards filed a petition with the Board asserting ownership of the Property. RR at 1a-52a. The Department filed preliminary objections[3] asserting that the petition was insufficiently specific and the Bussards

---

[3] We note that the regulations governing litigation before administrative agencies contain separate provisions for "complaints" and "petitions." *See* 1 Pa. Code §§ 35.9 (providing for filing of a "complaint" by "[a] person complaining of anything done or omitted to be done by a person subject to the jurisdiction of an agency, in violation of a statute or regulation administered or issued by the agency"); 35.10 (requiring that a "complaint" include "a statement of the facts forming the basis for the conclusion that there has been a violation of a statute or regulation administered or issued by the agency"); 35.17 (authorizing written petitions seeking "relief under a statute or other authority delegated to an agency"); & 35.19 (authorizing "[p]etitions for the issuance, in the discretion of an agency, of a declaratory order to terminate a controversy or remove uncertainty").

Here, the Bussards are seeking relief in the form of confirmation of title to the Property. They are not complaining about anything done or omitted to be done by a person subject to the jurisdiction of the Department. Accordingly, they correctly designated their filing before the Board as a petition rather than a complaint.

The regulations provide for motions to dismiss "complaints." 1 Pa. Code § 35.54 (authorizing a respondent to a complaint to include with his answer a motion for a more definite pleading or "a motion to dismiss a complaint because of lack of legal sufficiency appearing on the face of the complaint"). There is no parallel provision regarding motions for more specific pleading or dismissal of a petition. However, this Court has tacitly approved the use of motion practice under Section 35.54 in a quiet title action before the Board. *See McCullough v. Dep't of Transp.*, 578 A.2d 568, 569-70 (Pa. Cmwlth. 1990) (discussing a motion to dismiss filed under 1 Pa. Code § 35.54).

had failed to plead a complete chain of title. *Id.* at 57a-69a. The Board sustained the preliminary objections in part and directed the Bussards to file an amended petition. *Id.* at 126a-27a. The Bussards timely filed the Amended Petition. *Id.* at 129a-216a. The Department again filed preliminary objections. *Id.* at 221a-31a. This time, the Board sustained the preliminary objections and, concluding the Bussards did not recite a complete chain of title, dismissed the Amended Petition with prejudice. *Id.* at 301a & 305a-06a. The Board also rejected the Bussards' alternative claim that land from the Dicken Warrant comprised only 39.4 acres of the Property; the Board reasoned that because the Bussards did not establish title to the Property as a whole, they likewise did not establish title to the portion of the Property purportedly outside the Dicken Warrant. *Id.* at 305a. The Bussards filed a timely petition for review in this Court, which is presently before us for disposition.

## II. Discussion[4]
### A. Effect of the 1937 Morris Patent

The parties generally agree concerning the applicable law. A "warrant" constituted an original grant of land by the Commonwealth and authorized a survey of the granted land; upon payment of the purchase price, it conveyed equitable title constituting "a perfect title against all the world but the Commonwealth," which retained a lien solely for payment of the separate fee for issuing the patent. Dep't Br. at 26 (quoting *Hoffman v. Bell*, 61 Pa. 444, 454 (1869) (additional quotation marks omitted)); *see also* Bussards Br. at 11. The patent subsequently issued upon

---

[4] This Court must affirm the Board's decision unless it violates constitutional rights, is not in accordance with law, violates rules of practice and procedure of Commonwealth agencies, or lacks substantial evidence to support any finding of fact made by the Board and necessary to support the decision. 2 Pa.C.S. § 704.

payment of the patent fee was "merely a perfection and confirmation of the title by warrant." Dep't Br. at 26 (quoting *Delaware & Hudson Canal Co. v. Dimock*, 47 Pa. 393, 397 (1864) (additional quotation marks and bracket omitted)); *see also* Bussards Br. at 11 (likewise citing *Delaware & Hudson*). The person entitled to obtain a patent was the person who held ownership under the warrant; therefore, issuance of a patent to the wrong person would not convey any ownership interest, and the patentee would merely hold the legal title in trust for the true owner, the warrantee. Dep't Br. at 27 (citing *Keller v. Powell*, 21 JA. 796 (Pa. 1891); then *Duer v. Boyd*, 1 Serg. & Rawle 203, 208 (Pa. 1814); then *Gregg v. Patterson*, 9 Watts & Serv. 197, 205 (Pa. 1844)); *see also* Bussards Br. at 11 (citing *Delaware & Hudson*).

Here, the Dicken Warrant was the original warrant to land purportedly including the Property issued by the Commonwealth in 1863. RR at 150a-51a. Through subsequent conveyances by deeds, the Commonwealth obtained title once again in 1911. *Id.* at 134a-36a, 197a-99a, 201a-02a, 204a-05a, 207a & 209a-10a. McKinley Morris, however, ostensibly purchased the Property in 1923 from Rhoda May Strut and Robert S. Strut, persons not in the Commonwealth's chain of title, and then, in 1937, succeeded in obtaining the Morris Patent relating to the Property. *Id.* at 131a-32a, 150a & 153a-60a. The Department insists the Bussards have not pleaded a *prima facie* claim of title to the Property sufficient to survive preliminary objections, because they have not extended their chain of title any further back than 1923. We disagree.

The Department posits that where competing claims of title do not originate from a common source, the person challenging another's title must trace his own chain of title back to its origin. *See Bonaffon v. Peters*, 19 A. 499, 500 (Pa. 1890); *Faux v. Cooke*, 163 A. 384, 385 (Pa. Super. 1932); Dep't Br. at 19. The

6

Department insists that the Bussards have not done so. This argument rests on the premise that the Morris Patent was ineffective to convey title in the Dicken Warrant to McKinley Morris. However, if the Morris Patent *was* effective to convey title from the Commonwealth to McKinley Morris, then the Morris Patent, which undisputedly related to the Dicken Warrant, would necessarily carry with it the chain of title going back to the Dicken Warrant.

The Bussards contend that they have pleaded sufficient facts to raise a question of fact concerning the validity of the Morris Patent. We agree.

It is true that the Bussards have not specifically pleaded a chain of individual deeds extending all the way back to the Dicken Warrant. However, they have attached to their Amended Petition two particularly significant documents relating to the Morris Patent that relate to the Dicken Warrant and the chain of title to the Property.

First, by letter dated November 21, 1928 (1928 Letter), the Deputy Secretary of the Pennsylvania Department of Internal Affairs responded to McKinley Morris's inquiry concerning a patent relating to the Dicken Warrant, stating, in pertinent part:

> [O]ur records show that the title to this tract of land passed from the Commonwealth when they [sic] granted the warrant to Jesse Dicken to make a survey of the same. . . . *If your title to this land through William C. O'Neal and his successors in title comes from the above named Jesse Dicken*, then your title to the land is presumably good. . . .
>
> In order to procure a patent to this land from the Commonwealth in your own name, it will be necessary for you to fill out the enclosed blank, giving under the heading "Statement of Title" *a reference of the deeds of transfer from Jesse Dicken through the various owners to yourself.* . . .

7

RR at 159a (emphasis added). This correspondence makes clear that in order to be entitled to a patent, McKinley Morris would have to demonstrate a chain of title going back from himself all the way to the Dicken Warrant. Notably, the 1928 Letter's reference to William C. O'Neal as a predecessor in title is not reflected elsewhere in either the Bussards' pleaded chain of title or that of the Commonwealth. However, it implies that additional deeds in the Bussards' chain of title previous to 1923 may exist or may have previously existed.

Further, the Morris Patent itself recites, regarding the land subject to the Dicken Warrant:

> SAID TRACT OF LAND was surveyed on the twentieth day of May 1863 in pursuance of a warrant dated the eleventh day of May 1863, granted to the said Jesse Dicken, whose right and title in and to the same *by sundry conveyances and assurances in law have since become vested in the above named McKinley Morris*.

*Id.* at 157a (emphasis added). This language suggests that McKinley Morris was somehow able to demonstrate the chain of title going back to the Dicken Warrant, so as to qualify to receive the Morris Patent.

Of course, these two documents do not unequivocally prove title in the Bussards. However, we are unable to say as a matter of law that the Bussards cannot prevail in their claim of title to the Property. The Bussards have attached to the Amended Petition a Commonwealth communication explaining that a patent would require McKinley Morris to establish a chain of title. Further, the Bussards have attached the Morris Patent, issued by the Commonwealth and signed by its then-governor, stating that title to the land subject to the Dicken Warrant had become vested in McKinley Morris. A reasonable inference arising from these two documents is that McKinley Morris was able to satisfy the Commonwealth in 1937

8

that he held clear title to the land subject to the Dicken Warrant. *Accord Jones v. Scranton Coal Co.*, 118 A. 219, 220 (Pa. 1922) (observing that a memorandum of contract, although secondary evidence of the conveyance of property, supplied "the preliminary proof necessary" to establish title to the land in question).[5]

The Department concedes that a patent constitutes *prima facie* evidence of title. Dep't Br. at 20 n.9 (quoting *Consolidation Coal Co. v. Friedline*, 3 A.2d 200, 201 (Pa. Super. 1938)). We acknowledge that the Bussards must prove their title to the Property on the strength of their own claim and not any alleged weakness in the Commonwealth's claim. *James v. Bream*, 106 A. 722, 723 (Pa. 1919) (additional citations omitted). Nonetheless, we conclude that the Amended Petition and its attachments sufficiently set forth a *prima facie* claim of title to the Property so as to require a factual response by the Department.

The Department also posits that the Morris Patent was ineffective to divest the Commonwealth's ownership of the land subject to the Dicken Warrant because the Commonwealth had already reacquired that land for forestry reservation purposes in 1911. Dep't Br. at 22. The Department asserts that land acquired for such purposes is no longer subject to laws authorizing conveyance of unappropriated lands through the issuance of warrants and patents. *Id.* at 22-23 (quoting section 8

---

[5] The Board is not bound by rules of evidence. *Keystone ReLeaf LLC v. Pa. Dep't of Health*, 186 A.3d 505, 526 (Pa. Cmwlth. 2018) (citing 2 Pa.C.S. § 505). However, we note that the Pennsylvania Rules of Evidence support the admissibility of a so-called ancient document, which is a document or data compilation that

> (A) is in a condition that creates no suspicion about its authenticity;
>
> (B) was in a place where, if authentic, it would likely be; and
>
> (C) is at least 30 years old when offered.

Pa.R.E. 901(a) & (b)(8). The Morris Patent appears to fit this definition, and the Bussards may be able to establish the authenticity of the 1928 Letter as well.

of the Act of February 25, 1901, P.L. 11, 32 P.S. § 169). This is true as a general statement of law. However, it does not eliminate the underlying question of fact, which is whether the Commonwealth reacquired a valid title when it ostensibly repurchased the land subject to the Dicken Warrant in 1911. If the Bussards' predecessors in title, rather than the Commonwealth's grantors, held title to the Property in 1911, then the Commonwealth never reacquired a valid title, and, perforce, it never acquired title for forestry purposes. Thus, the Department's argument cannot prevail as a matter of law on a demurrer to the Amended Petition.

The Department also cites a number of judicial decisions holding that an agency is not required to hold a hearing and may provide an adequate opportunity for the parties to be heard through "motion proceedings, including briefs and arguments by both parties, *where there are no disputed facts*." Dep't Br. at 16 (citing collected cases) (emphasis added). This argument is inapt here, however, because as explained above, the Bussards have raised disputed questions of fact concerning their title to the Property, most notably the question of whether McKinley Morris adequately proved his chain of title to the Property in order to obtain the Morris Patent. Therefore, we conclude that the Board erred by sustaining the Department's preliminary objections and dismissing the Amended Petition with prejudice. Instead, the parties should complete their pleadings and then, assuming a dispute of fact still remains, the Board should hold a hearing to receive evidence[6] concerning the facts surrounding title to the Property.

---

[6] We recognize that the Bussards have not pleaded the specific deeds in their chain of title prior to 1923 and, as a practical matter, they may ultimately be unable to recreate their purported chain of title with sufficient factual evidence to prevail at a hearing. However, that potential evidentiary problem does not support dismissal of their claim at the preliminary objection stage of the proceedings. The Bussards have pleaded facts in support of their claim; they were not required

10

## B. Portion of the Property Outside the Dicken Warrant

In their alternate argument, the Bussards suggest that even if the Commonwealth owns the land subject to the Dicken Warrant, the Board should not have dismissed the Bussards' claim because only 39.4 acres of the Property are part of the original Dicken Warrant. In support of that averment, the Bussards attached to the Amended Petition a map prepared by their surveyor and attached to the deed from Frances L. Ketterman to the Bussards, indicating the 39.4-acre portion of the Property to which the Bussards contend the Commonwealth's potential title is limited. RR at 146a; *see also id.* at 151a (drawing included in the Dicken Warrant).

The Board reasoned that if the Bussards could not establish title to the Property as a whole, they likewise could not establish title to a portion of the Property. RR at 305a. However, as we have rejected the Board's conclusion regarding the sufficiency of the Bussards' pleading to assert title to the Property, we likewise reject the Board's related conclusion concerning title to less than all of the Property.

The Department argues that the map attached to the Amended Petition, which the Department describes as a "deed plotting," is insufficient evidence that

to plead all of their evidence in the Amended Petition. The applicable regulation governing petitions provides merely:

> Petitions for relief under a statute or other authority delegated to an agency shall be in writing, shall state clearly and concisely the grounds of interest of the petitioner in the subject matter, the facts relied upon and the relief sought, and shall cite by appropriate reference the statutory provision or other authority relied upon for relief.

1 Pa. Code § 35.17. Thus, there is no requirement that a party prove in full its entitlement to relief in its initial pleading. In that regard, the Department's assertion in its brief that the Bussards "are incapable of establishing title *by a fair preponderance of the evidence* by showing title sufficient to base a right of recovery" further highlights the impropriety of dismissing the Bussards' claim of title at the preliminary objection stage. Dep't Br. at 21 (emphasis added).

not all of the Property was within the Dicken Warrant. Dep't Br. at 32. However, this alleged insufficiency goes to the weight of the evidence, which is for the Board to determine as the finder of fact at a hearing. *See Hughes v. Dep't of Env't Res.*, 312 A.2d 819, 821 (Pa. Cmwlth. 1973). The Bussards suggest that "[p]roof of how the surveyor reached his conclusions is . . . a matter to be heard at the time of the hearing in this case." Bussards Br. at 13. We agree.

Moreover, the Bussards' claim of title in this action is solely against the Commonwealth. If they are able to demonstrate that a portion of the Property was not part of the original Dicken Warrant or was subsequently conveyed outside of the Commonwealth's chain of title, then that portion of the Property would be removed from the present dispute.

For these reasons, we conclude that the Board erred in dismissing, based on preliminary objections, the Amended Petition's alternate claim of title to the portion of the Property that the Bussards assert is outside the Dicken Warrant.

## III. Conclusion

Based on the foregoing analysis, we vacate the Board's dismissal of the Amended Petition and remand this matter to the Board for further proceedings consistent with this opinion.

_____
CHRISTINE FIZZANO CANNON, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donald L. Bussard, Barbara J.     :
Bussard, Edward F. Lynch and     :
Carol L. Lynch,     :
          Petitioners     :
    :
        v.     :
    :
Pennsylvania Department of     :
Conservation and Natural Resources     :
(State Board of Property),     :    No. 516 C.D. 2021
          Respondent     :

## O R D E R

AND NOW, this 10th day of June, 2022, the order of the State Board of Property (Board) dated April 15, 2021 is VACATED, and this matter is REMANDED to the Board for further proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge